JAMES WILKINS, W. B RUNYAN, J. C. KEYSER ET AL., APPELLANTS. VS. THE PENSACOLA CITY COMPANY, W. H. DAVIDSON, ET AL., APPELLEES.

BILL TO QUIET TITLE—EQUITY JURISDICTION—PRESCRIPTIVE TITLE—BURDEN OF PROOF—MIXED POSSESSION—LANDLORD AND TENANT.

1. Where property consists of a large tract of land subdivided into numerous blocks, lots and streets, within and adjoining a growing city, and there are a large number of persons claiming possession of and title to portions thereof from the same source as against one or more persons claiming title from the same source, and there is a continuous dispute between such adverse claimants as to the right of possession to different portions thereof, and continuous interference on the part of one set of adverse claimants with the possession of the other opposing claimants and their lessees by procurement of their attornment to them, and by forcible or fraudulent obtainment of possession, and the legal title to the land has been established by one or more actions in ejectment at law after vexatious and continued litigation between such adverse claimants, a court of equity has jurisdiction by bill to quiet title, on behalf of the claimants in whose favor the title has been established at law, to settle the title between the parties and to declare

the right between them and to protect it by perpetual injunction. The ruling in Caro vs. Pensacola City Company, 19 Fla. 766, approved.

2. Where the owner of the true legal title to a tract of land is in actual possession of a part of said tract, and other persons claimi· g adversely are in possession of other portions thereof, the law is well-settled that in such cases of mixed possession, the possession of all parts of the tract not shown to be actually and adversely occupied will be presumed to be with the owner of the true title in possession of a part of the tract. The real title draws to the actual occupant who holds it a constructive possession of all the land covered by it that is not actually and adversely occupied; and the adverse occupant, not having any title, is to be confined to the actual limits of his occupancy.

3. Where no other title is set up against the legal title to land than that of adverse occupancy, the burden of proof of all the essential facts requisite to give title by adverse possession is upon him who asserts such prescriptive title. Such proof, to be effectual, must show a continuous, unbroken, open, notorious, actual and adverse possession under a claim of right for the full statutory period; and the limits, location and extent of his occupancy must be definitely and clearly established by affirmative proof, and can not be established or extended by presumption.

4. The law is well-settled that a tenant, after the expiration of his lease, may disavow and disclaim his tenancy and the title of his landlord, and drive the landlord to his action for the recovery of possession within the period of the statute of limitations, but before any foundation can be claimed for the operation of the statute, in such a case, a clear, positive and continued disclaimer and disavowal of the landlord's title, and an assertion of an adverse right must be brought home to the landlord by clear, positive and distinct notice.

Appeal from the Circuit Court for Escambia county.

The facts in the case are stated in the opinion of the court.

*Enoch J. Vann & Son*, for Appellants.

Under our statutes and the decisions of this court and other courts, in order for one who has no valid paper title to land, to acquire a complete title by adverse possession, the following propositions have been established, and they are so familiar and unquestioned that a citation in support of them is wholly unnecessary.

1. The possession must be actual, open, notorious, exclusive and hostile to the title of the true owner.

2. It must be under a bona fide claim of title, and continuous for seven years.

3. It must cover land under substantial enclosure, or that was improved and cultivated continuously for seven years.

4. The possession of the tenant is the possession of the landlord or lessor.

5. Where there is no actual possession of the land, the holder of the legal title has the constructive possession of it, but if there is actual possession, and it is adverse in the legal essentials above stated, the occupant or those under whom he claims, acquire a perfect title, even though he or they may have no paper title, or may claim under one that is void.

This being the law in regard to adverse possession, it remains to be determined whether, as a matter of fact, the appellants or those under whom they claim, to-wit: the heirs of Rivas, acquired title by adverse possession before the institution of this suit, to any part of the land in controversy, and if so, to what parts.

To establish title by adverse possession, in this case, it must appear from the testimony:

First. That the heirs of Rivas made claim in good faith to the legal title to the land in question.

Second. That they got actual possession of the land or some part or parts of it, and substantially enclosed and improved and cultivated it, continuously for seven years before this suit was begun.

Appellants claim that these facts appear sufficiently from the testimony, at least in regard to the holdings of their tenants above mentioned, and perhaps as to others, and that the court below erred in not so deciding.

As to the holding of Pleasure, appellees may contend that as he was originally their tenant or the tenant of some of them, he is estopped from denying the title of his lessors, and therefore that the appellants derived no advantage from his possession. To meet this objection, the following authorities are cited.

While a tenant can not dispute his landlord's title until he shall have surrendered possession, puts things in statu quo and a person claiming title by adverse possession through a tenant is in the same attitude towards his first landlord, still, if the tenant has dissolved his relation, he may controvert the first landlord's title and thus the second landlord may secure to himself the advantages which a continued possession by his tenant affords. Camp vs. Camp, 5 Conn. 291; reported in 13 Am. Dec. 60, and note 68.

The court say in 11 Pick. 1 "suppose there had been a written lease by plaintiff to the defendant, and just before its expiration, and the defendant for good cause, or without any legal cause, had renounced the title, and given notice of his intention to commence upon another title, after the lease should expire, such renunciation would have rebutted any right of the plaintiff to claim to hold the defendant accountable as a

tenant at sufferance.   It was not the mere naked unex-
plained holding over of a tenant of which we read in the
books.   All that the law requires is, that during the
time when the tenant actually holds, by the possession
of his landlord, the landlord's title shall not be dis-
puted.   But when he ceases to hold in that relation,
he may commence upon an adverse title, after the ex-
piration of the lease." Boston vs. Binney, 22 Am. Dec.
353.

The estoppel of a tenant only lasts during the term
of a lease.   Page vs. Kinsman, 43 N. H. 328; Fuller
vs. Sweet, 30 Mich. 223.

The bringing of the action by the appellees or their
grantees against Pleasure for possession, was an ac-
knowledgment by them of the termination of his
lease.

ADDENDUM TO APPELLANTS' BRIEF—AS APPLICABLE TO
THE HOLDING OF EPHRAIM PLEASURE.

To the point that when a tenant openly and notori-
ously disclaims the title of his landlord, and asserts
title in himself, or in some stranger to whom he attorns,
then the possession of the tenant becomes adverse,
and the stranger can avail himself of it.   That the
doctrine that a tenant is estopped from denying the
landlord's title does not hold in such a case.   Jackson
vs. Davis, 3 Cow. 451—15 Am. Dec. 451, & n, & au-
thorities there cited.   Willison vs. Watkins, 3 Pet. 48;
Peyton vs. Stith, 5 Pet. 491; Walden vs. Bodley, 14 Pet.
182; Merryman vs. Brown, 9 Wall. 601; Tyler on Eject-
ment, 876.

*Blount & Blount*, for Appellees.

TAYLOR, J.:

The appellee, the Pensacola City Company, a corporation, and divers other persons, its alienees, on the 5th day of March, A. D. 1887, filed their bill in equity in the Circuit Court of Escambia county against the appellants, and against Georgia I. Caro, John B. Caro, Theresa E. Caro, Josephine Caro, Mary L. Caro (children of A. V. Caro), Irene C. Williams, Matilda C. Duval and numerous other persons claiming to be alienees or lessees of the Caros, or claiming portions of the property involved in the suit. The bill alleges in substance: That the complainants are the owners in fee of the tract of land in the city of Pensacola, Florida, known as the Chabeaux or Rivas tract. That said tract originally belonged to one Gabriel de Rivas, but the title thereto was divested out of his heirs about the year 1817 by a legal and valid sale made under the authority of the Spanish court in Pensacola, and by mesne conveyances from the purchaser at said sale became vested, on January 13th, 1837, in the Pensacola City Company, a joint stock association, by which it was conveyed, in the year 1870, to the Pensacola City Company, a corporation then organized under the laws of Florida, and one of the complainants, and that the interests of the other complainants have been acquired from the said corporation. That in 1837, upon the purchase of the said property by the Pensacola City Company, it went into possession of the same, and it and its grantees, mediate and immediate, the complainants, have been in possession ever since, except as hereinafter stated. That it then had it laid off into lots, blocks and streets and a plat thereof made, known as the Georgia E. Chase plan, and of other of his property, and had the same printed, a

copy of which is attached as an exhibit to the bill; and that portions of said tract were then and subsequently sold by the said plan. That the Pensacola City Company, and its grantees mediate and immediate, have ever since paid taxes upon the said property, except during the war between the States of the American Union from 1861 to 1865. That in the year 1870, upon the purchase aforesaid by the complainant, the Pensacola City Company, it caused the said tract, together with other of its property, to be again laid off into lots, blocks and streets, and a plat thereof to be made, known as the "Harding & Lee plan," a copy of which is attached as an exhibit to the bill, and that by said plat it has made sale to the other complainants herein of nearly all of the said tract, except what it has reserved for itself. That from the time of the purchase by the Pensacola City Company, the joint stock association, in 1837, its claim to the said property and its possession thereof remained unchallenged by any one, and the said acts of laying off, plotting, selling and paying taxes were done without protest, objection or molestation until A. D. 1872, when E. J. Caro, Matilda C. Duval and Irene C. Williams, claiming to be the heirs of the aforesaid Gabriel Rivas, brought suit in ejectment against one of the tenants of the Pensacola City Company, the complainant herein, one C. M. Hooper for the possession of a portion of said tract of land. That in said suit the said plaintiffs relied upon the title of the said Gabriel Rivas and their descent from him, claiming that the title had never been divested out of him or his heirs, and the said C. M. Hooper defended upon the title of his landlord, the said Pensacola City Company, derived as aforesaid. That before the said suit came to trial, the attorney for the said plaintiff, Richard L. Campbell, Esq., became

JUNE TERM, 1895.    43

Wilkins, Runyan, Keyser et al. v. P. C. Co. et al.—Opinion of Court.

convinced, by the discovery in the Spanish Archives of West Florida, of the evidence of the divestiture aforesaid of the title out of the heirs of the said Gabriel de Rivas, that the title was not in the said plaintiffs, but in the Pensacola City Company, complainant herein, and declined to further prosecute the suit, but the said plaintiffs obtained other attorneys, and the suit, after the avoidance of a trial as long as possible by the plaintiffs therein, by continuances, dismissals and voluntary non-suits, came on for trial in the United States Circuit Court for the Northern District of Florida, at Pensacola, in 1879, and was then and there decided by verdict and judgment upon the merits of the conflicting claims of title as aforesaid in favor of the defendant C. M. Hooper, tenant of the said complainant, the Pensacola City Company, and thereby in favor of the title of the said complainant, and against the pretended title of the said plaintiffs claimed from the said Gabriel de Rivas, and that said judgment remains unreversed. That up to the time of the bringing of said suit no claim of title to the said property had ever been asserted by any of the heirs of the said Gabriel de Rivas, or by the father of the said A. V. Caro, E. J. Caro, Matilda C. Duval and Irene C. Williams, one Joseph E. Caro, who was the son-in-law of the said Gabriel de Rivas, and the keeper of the Spanish Archives of West Florida, and was as well acquainted with the title of property in Pensacola as any other man in it, the fact being that the said Joseph E. Caro was a party to the sale of the said tract of land by authority of the said Spanish court in 1817, and that no assertion or pretence of claim was made until years after his death, which occurred in A. D. 1858, or 1859. That at or about the time of the bringing of the said suit the said E. J. Caro, A. V. Caro, Matilda C. Duval and

Irene C. Williams began and have continued to take other steps to assert a title to the said property by making numerous sales of portions of the same, by putting tenants under them into possession of parts of the same, by causing tenants of the complainants to attorn to them, by breaking open houses and breaking down enclosures that had been erected by complainants, and putting their agents and tools therein to hold for them, and by substituting a new occupant thereof holding under them when the complainants would seek to dispossess, thus continually changing the persons in possession in order to frustrate the complainants in their endeavor to obtain or retain possession. That in order to settle the title to the said property to be without question in the complainants, and to dispossess the said pretended claimants of a portion of the said tract of which they had possession, the Pensacola City Company, in 1877, brought suit against the said A. V. Caro, E. J. Caro, Matilda C. Duval and Irene C. Williams in ejectment in the Circuit Court of Escambia county, Florida, which said suit resulted in a verdict and judgment for the said Pensacola City Company, and in another adjudication of the validity of their title to the said tract, the said suit having been tried and determined on the merits of the said pretended title of the said defendants as against the title of the said company derived as aforesaid. That in spite of the said adjudication upon the said title the said A. V. Caro, E. J. Caro, Matilda C. Duval and Irene C. Williams not only continued to disturb the possession of the complainants in the said tract by interference with their tenants by putting tenants into possession under them, and by sales and attempts to sell the said property or portions of it, but also by themselves and by their tenants and agents committed

numerous trespasses upon the same, and cut down and destroyed timber, wood, shade and ornamental trees thereon. And thereupon the said Pensacola City Company filed a bill in the Circuit Court of Escambia county, Florida, in A. D. 1879, to enjoin the said A. V. Caro, E. J. Caro, Matilda C. Duval and Irene C. Williams from the further commission of the said acts of trespass and interference, and to quiet the title to the said property. That in the said suit a temporary injunction was obtained, and after due pleadings and proofs the same was made perpetual, enjoining the said persons as prayed, and declaring the title to the said property to be in the said Pensacola City Company and its assigns. That upon appeal by the defendants in said suit to the Supreme Court of Florida the said decree was affirmed as to the said A. V. Caro, who was a resident of Florida, and in 1883 reversed as to the said other parties defendant, because no service had been made upon them—they being nonresidents. That complainants are informed, believe and charge that during all this time the said A. V. Caro and his family wholly, and the said other parties to said suits in part, were living upon the proceeds of sales of portions of said lands, that they would, through the said A. V. Caro, induce persons to purchase, and from the tenants whom they would put into possession, and from sales of wood cut therefrom. That in order to continue the said means of livelihood the said Matilda C. Duval, Irene C. Williams and E. J. Caro brought a bill in 1884 in the United States Circut Court for the Northern District of Florida, against the Pensacola City Company and Nancy L. Caro, the wife of the said A. V. Caro (who by some pretended means had, after the said A. V. Caro had been enjoined as aforesaid, become vested with his alleged interest in said property), the

pretended purpose of the said bill being to have the said title adjudicated by the said court, and to obtain an injunction against the said Pensacola City Company. That in the said cause proofs were taken, and after numerous efforts by the defendant, the Pensacola City Company, to have the same tried, and as numerous and strenuous efforts by the complainants to postpone the final adjudication and to protract the litigation, the cause came on to be heard before the judge of said court, and the said injunction was refused and the cause dismissed, and the judge of the said court delivered an opinion in favor of the title of the Pensacola City Company to said property, and against the title of the said complainants, a copy of which opinion is attached as an exhibit to the bill. That in order to enable them to carry 'on the said litigation the said A. V. Caro and his brother and sisters aforesaid have from time to time, as complainants are informed, believe and charge, obtained money from divers persons to conduct the said litigation, promising to the said persons large interests in the said land upon a successful termination of such litigation, they, the said A. V. Caro and his brother and sisters, well knowing the litigation can have no successful termination for them, but are desirous of prolonging the same for the purpose of gain therefrom. That the defendant J. C. Peterson is one of the persons who had been thus induced to advance funds for the prosecution of the said litigation, and who has obtained and claims a pretended interest in the said property, and, since the death of the said E. J. Caro (who has departed this life) has become the administrator of his estate, although he was not of kin to, nor a creditor of, the said deceased. That they have also induced, as complainants are informed and believe and charge, the defendants James Wilkins,

William B. Runyan and Joseph C. Keyser to enter with them into the practices hereinbefore set forth of going into possession of parts thereof, of attempting to obtain possession of other parts of the said tract of land by putting tenants thereon, and by inducing, by promises and by intimidation, the tenants of complainants to attorn to them, and have contracted with the said James Wilkins, for the use of his money, and with the said William B. Runyan and Joseph C. Keyser, for the use of their services in the connection as aforesaid of their designs, and on nominally selling large portions of the said tract to them for nominal sums of money. That within the past six months the said persons have induced one Ephraim Pleasure, who went into possession of several acres of said tract as the tenant of the Pensacola City Company, to repudiate his said tenancy and to withstand a suit at law for the possession of said premises, and that the said James Wilkins is paying the expenses of the said litigation, and that the defendants are continually and daily inducing other tenants of the complainants to refuse to recognize the title of the complainants, thus rendering necessary numerous suits by complainants to dispossess them. That despite the injunction aforesaid against the said A. V. Caro, he has continued in his interference with the possession and title of the complainants, and has twice been punished for a contempt of the said injunction, and yet, notwithstanding, he has given aid, is giving notice by publication in a newspaper in the city of Pensacola of his intention on the 7th day of March, 1887, to apply to the judge of the Circuit Court of Escambia county, for leave to sell the pretended interest of the said defendants John B. Caro, Theresa E. Caro, Georgiana I. Caro, Josephine Caro and Mary L. Caro, his children by his wife Nancy L. Caro (now

deceased) in the said tract of land, and he is, as complainants are informed, believe and aver, the person who negotiates with the said Runyan, Wilkins, Keyser and others for their money and services as aforesaid, and who still acts as agent for the other defendants, who pretend to be heirs of said Gabriel de Rivas. That there is being published in a newspaper in the city of Pensacola an advertisement in the names of Octavia C. Thompson, a daughter of A. V. Caro and Nancy L. Caro, offering to lease and sell portions of the said tract, which advertisement complainants believe and charge to be at the instigation of the said A. V. Caro. That in spite of the aforesaid decisions adverse to the pretended claims of the defendants, the acts hereinbefore charged against them have been continuous for years, and still continue, so that though the complainants possess an undoubted title to the said portions of said tract as aforesaid, it is impossible by ordinary suits at law in trespass or ejectment to protect their said rights of possession, and that if it were possible it would require innumerable, vexatious and expensive suits by each of them against each of the defendants, whose fertility of resource in vexation and in the evasion of the results of law suits seems to be, under the leadership and guidance of the said A. V. Caro, inexhaustible. That the actions aforesaid of the defendants have rendered the said property almost entirely unsalable by the complainants, and that if said actions are permitted to continue as they have continued for the past fifteen years, not only will all the shade and other valuable trees be cut therefrom, but the said property will be utterly valueless to complainants because of their inability to sell the same.

Numerous defendants named are alleged to be holding possession of portions of the said property as tenants of the other defendants, or some of them, and paying rents to them for the possession thereof. Numerous other defendants named are alleged to have acquired possession by trespass upon the possession of the complainants, and hold the same under the said pretended title of the said A. V. Caro, E. J. Caro, Matilda C. Duval and Irene C. Williams. That the defendants herein are entirely without the means and property to respond in damages to the complainants for the injury which they have already done to them by their acts aforesaid, or for that which a continuance of the said acts will produce, or to be made responsible for the rents that they collect from the said tenants. That the injury to them by the said acts of the defendants is irreparable in the destruction of shade trees on said land, in the costs incident to the numerous actions of law in trespass, ejectment and unlawful detainer, made necessary by them, in the damage to the title of said property and in the total inability of the defendants by reason of their want of means to answer the damages thus occasioned by them by their acts in the premises.

The prayers of the bill are: That the title to said property may be declared to be in the complainants as claimed by them. That the defendants and each and every of them, their agents, servants and attorneys, be perpetually enjoined from interfering in any way with the possession of complainants or of their tenants, and from asserting title to the same, or any part thereof; from leasing or selling any part of the same; from re-

ceiving rent from any one, or paying the same to any other than the complainants for the use of any part of the same; from taking or holding possession of the same, or any part thereof, by themselves, their agents or tenants; from cutting any shade trees, or wood, or timber upon the said land; from collecting the proceeds of any former sales or leases of said land; from committing any trespasses of any kind whatever upon the said property; and from advising or counseling, or aiding the defendants or any one else in the commission of any of the said acts. That a receiver may be appointed to take possession of the lots and parcels of land and the improvements thereon in the said tract, that have been taken possession of by the said defendants and now held by them or their tenants, as alleged, and to preserve and rent the same until the further orders of the court; and that the defendants be required to pay to the complainants all such damages as they may have sustained.

Many of the defendants filed disclaimers. The defendant J. C. Peterson filed an answer disclaiming any interest or part in the matters involved except a certain portion of the tract that he alleges in his answer was conveyed to him in the year 1872, and of which portion he asserts that he has been in continuous adverse possession ever since. Ramon Campderos interposed a seperate disclaimer and answer, similar to that of J. C. Peterson, asserting adverse possession of another portion of said tract under a deed of same for more than seven years prior to the filing of the bill. The defendants James Wilkins, W. B. Runyan, J. C. Keyser, Octavia Thompson and Henry J. Thompson, her husband, filed a joint and several answer, in substance, as follows: They deny that the complainants and those for whom they sue are the owners in

fee of the Rivas or Chabeau tract. They admit that said tract originally belonged to one Gabriel de Rivas. They deny that the title thereto passed out of Gabriel de Rivas' heirs by a valid and legal sale under Spanish authority, or that under such sale and mesne conveyances the said property became vested in the Pensacola City Company. That they are informed, believe, and so allege that complainants claim that a valid sale under Spanish authority was made to one Gregario Caro, and that complainants claim title through an alleged deed from said Gregario Caro; but they are informed, believe, and so allege that at the time of the alleged sale by Spanish authority the said Gregario Caro had already departed this life, and that had he been living he would not have been of an age at the time of the alleged sale by him to acquire or dispose of real estate according to the law of Spain then in force in Florida. They deny that the Pensacola City Company went into possession of said tract in 1837, or that complainants have been or are in possession thereof, except as follows: That in 1883 the complainant W. H. Davidson, and in 1885 the complainant W. H. Tate went into possession illegally of small portions of said tract, and the Pensacola and Atlantic Railroad Company have run their railroad track through said tract without claim of title, and without permission of any one authorized to give it; and the complainant L. Boley has exercised acts of ownership over a few lots. That as to the portion taken possession of by the said W. H. Davidson, he was ousted by one Higgins of a portion thereof, and upon a trial before the county judge, the complainant Walter Tate then being such county judge, a decision was rendered in favor of the said Higgins. The laying off of the tract into lots, blocks and streets by the

Pensacola City Company is denied, except so far as to have plats made thereof, but says that it was done forcibly and against the protest of the Rivas heirs. They admit that of late years the complainants have attempted to make sales of parts of said tracts, but allege that in so doing they have trespassed upon the rights of defendants, and of those through whom they claim. They deny that from 1837 to 1872 the claim of the Pensacola City Company to said tract and its possession thereof remained unchallenged, but allege that on the contrary, the said Pensacola City Company was not in possession thereof, and the said tract was of such slight value, being a wilderness, that the heirs of Gabriel de Rivas left it unoccupied, but always claimed title to the same and intended to assert their title and take actual possession thereof when the tract should become of sufficient value to justify the expense incident to such act. That about the year 1870 the said tract began to increase in value and to be sought after, and that then the Rivas heirs began to take possession of parts thereof under their title as heirs, which they did openly, and in which they were not opposed or molested by any one, though representatives of the said Pensacola City Company were in the city of Pensacola, and were aware of such acts of ownership on the part of said heirs. That the agents of said heirs put one Dan Washington in possession as their tenant of a part of said tract, but he was forcibly ousted by one C. M. Hooper, mentioned in the bill. That for the purpose of dispossessing the said Hooper the suit in ejectment, mentioned in the bill, was brought by E. J. Caro, Matilda C. Duval and Irene C. Williams, as heirs of said Gabriel de Rivas, against the said Hooper, and they admit that in the said suit the plaintiffs relied on their title as heirs at law of said Gabriel de-

Rivas, and that said Hooper defended on the alleged title of the Pensacola City Company, and they admit that R. L. Campbell, their attorney, abandoned the suit, but say that they are not fully advised as to why he abandoned same. They admit that when said suit was brought, said plaintiffs and their attorney were in ignorance of the existence of the documents that were afterwards claimed to have been discovered that evidenced a sale of the property by an alleged administrator of Gabriel de Rivas to said Gregario Caro, and therefore the plaintiffs in that suit and their attorney had had no occasion to investigate the validity of such alleged sale, and it was not until long thereafter, and after the said attorney had abandoned the said suit, that it was discovered that said Gregario Caro was dead at the time of said alleged sale to him, and that, if living, he would not have reached an age at which, under Spanish law, he could have acquired or disposed of property. They deny that by continuances, dismissals and voluntary non-suits the said plaintiffs sought to evade a trial of said ejectment suit. That it was several times continued, sometimes on their motion, and sometimes on the motion of the defendant, but always for good and sufficient reasons in the opinion of the court. They admit that said ejectment suit was tried in 1879, and resulted in a verdict and judgment against them, but allege that the said trial was not a fair and impartial one, because of the physical and mental in capacity of the judge presiding at the trial. That at the trial of said ejectment suit the plaintiffs therein and their attorney were still ignorant of the fact of the age of said Gregario Caro, and of his death before the date of the alleged sale by him. They deny that Joseph E. Caro did not assert title to the said tract to be in the heirs of Gabriel de Rivas, but, on the contrary, say

that they are informed and believe, and so allege that he always claimed and asserted that the said heirs had title to said land and would act upon it when the land became valuable. They admit that the said E. J. Caro, A. V. Caro, Matilda C. Duval and Irene C. Williams began to and have continued to take steps to assert title to said tract, have made sales of parts thereof, have placed tenants thereon, and by every other legitimate and lawful means in their power taken possession and control of said tract, and have been ever since in virtual possession of the entire tract, with the exceptions above mentioned, by means whereof, as these defendants allege, title by adverse possession has accrued to said heirs, and these defendants claiming through them, if such title were needful in aid of the title they had before as such heirs. The breaking open of houses, tearing down of enclosures and the substitution of tenants for others against whom actions had been brought is denied. The suit in ejectment in the Circuit Court of Escambia county by the Pensacola City Company against A. V. Caro, E. J. Caro, Matilda C. Duval and Irene C. Williams, and its resulting in a verdict and judgment in favor of the Pensacola City Company is admitted, but they assert that such judgment is void because of the disqualification of the judge who presided when it was rendered. The suit in equity by the Pensacola City Company against the Rivas heirs for injunction and to quiet the title, and its result in a decree in favor of the complainant, and its affirmance by the Supreme Court of Florida on appeal, as to the defendant A. V. Caro, therein, is admitted; but they say that these defendants are not asserting or claiming any title or right under A. V. Caro, and they assert that said decree is void because of the disqualification of the judge who pronounced

the same. The suit, by bill in equity, brought in the U. S. Circuit Court for the Northern District of Florida, by the Rivas heirs, against the Pensacola City Company for injunction and to quiet the title, and its result in a refusal of the injunction prayed and in the dismissal of said bill is admitted. The obtaining of money by the Rivas heirs to conduct their litigation by sales of parts of said tract to J. C. Peterson, James Wilkins, W. B. Runyan and Joseph C. Keyser is denied. They deny that Ephraim Pleasure is or has been a tenant of the Pensacola City Company. They deny ever having induced tenants of complainants to renounce to them, except by asserting title to the property and by expressing the intention to dispossess persons denying their title. They deny the allegation as to their insolvency.

Temporary injunction was granted and a receiver appointed as prayed. Voluminous testimony, both oral and documentary, was taken for both the complainants and defendants, and the court at the final hearing upon the pleadings and proofs rendered a final decree in conformity to the prayers of the bill, except as to two parcels of the tract that were shown to have been held adversely to the complainants by the defend-ants J. C. Peterson and Ramon Campderos, under claim of title to same for more than seven years prior to the filing of the bill. From this decree the appellants named have taken this appeal.

It will be observed from the foregoing statement of the pleadings that this suit is practically a continuation of or supplementary to the suit of the Pensacola City Company vs. A. V. Caro, decided by this court at its January term, 1883 (19 Fla. 766), the allegations of the bill in that case being practically the same as those of the present bill. In that case the jurisdiction in

equity to entertain the suit and to grant the relief prayed was fully sustained, and the present suit and decree simply extends the relief granted in that case in favor of and against other persons not made parties in that case. The present appellants contend that the title to the three hundred arpens of land in dispute, originally granted in 1806 by the Spanish government to Gabriel de Rivas, has never passed out of his estate, and that the Caros, who are heirs at law of Gabriel de Rivas, inherited the same, and that through them the appellants have acquired their interests.

That there was a sale of this land by authority of the Spanish court for West Florida, at Pensacola, upon the application of the executrix and widow of Gabriel de Rivas and of the guardian for the minor heirs, for the purpose of a division among and between the heirs at law, and that such division was had and made of the proceeds of its sale, there can be no question. The documents introduced by the complainants from the Spanish Archives, showing the entire proceedings had, have forcibly impressed us for their regularity and particularity, and for the zealous care taken by the court to have all parties interested duly notified of every step taken in the procedure, and the ample opportunity afforded to all persons concerned to be fully heard. Against the authenticity of these documents nothing is interposed. The documents introduced show also, beyond cavil we think, that Gregario Caro became the purchaser of the entire tract at that sale, at a price far in advance of the amount at which it had been officially appraised by order of the Spanish court prior to the order for its sale, and that he paid the purchase price, and that the sale was duly confirmed to him by the Spanish court, and that the money paid by him for its purchase was duly divided by the Span-

ish court among the heirs of Gabriel de Rivas entitled to same. The documents introduced by the complainants show further, conclusively we think, that Gregario Caro subsequently conveyed the entire tract by deed in fee in due form to Chabeaux, Fitzsimmon and Smythe, from whom, by mesne conveyances in due and regular form, the Pensacola City Company have derived title to the entire tract. The defendants at the trial, however, endeavored to impeach the sale to Gregario Caro, and the deed from Gregario Caro to Chebeaux, Fitzsimmon and Smythe, by an attempt to show that Gregario Caro departed this life at about the age of sixteen years, and prior to the date of said sale made under the authority of the Spanish court. To establish such asserted minority and death of Gregario Caro they introduced the very indefinite and unsatisfactory oral testimony of some ancient witnesses, and two documents, the one purporting to be a notice that was sent around after Gregario Caro's death, according to the then custom, announcing the day and hour of his burial, the other purporting to be a letter from one John Malagossa, then a resident of Pensacola, Florida, to a connection of the Caro family residing in Mobile, Alabama, in which the announcement of Gregario Caro's death is made. The recent date when these two documents were discovered, and the highly interested source from which they were produced, do not impress us as entitling them to much credence, and it is unfortunate for the *bona fides* of the letter from John Malagossa that it was conclusively shown, by numerous deeds introduced by the complainants from the Spanish Archives, that were executed by him to divers persons in the presence of the Spanish officials, at different dates contemporaneously with the date of the pretended letter, that he was una-

ble to write, and had to have his deeds executed for him by another, and yet the ancient, but modernly produced, letter purports to have been written with his own hand. On the other hand, to meet this effort of the defendants, the complainants introduce the lengthy, careful and particular proceedings of the Spanish court showing the sale to Gregario Caro and its formal confirmation to him, that, of itself, from its particularity, would induce the belief that a court, so formal and careful otherwise, would hardly have permitted the sale to be made and confirmed to a person known to be dead at the time, or unable from his minority to acquire or dispose of property. But besides this the complainants have shown, conclusively we think, from the inscription upon the iron cross, identified as marking the grave of Gregario Caro, and by the testimony of several living witnesses, and by the production of numerous deeds duly witnessed, and one or two executed, in presence of the Spanish officials, by Gregario Caro, that he was alive for some time subsequent to the sale of said land under the authority of the Spanish court, and subsequent to the conveyance of same by him to Chabeau, Fitzsimmons and Smythe, and that he was upwards of twenty-five years of age at his death. The evidence is overwhelmingly conclusive, we think, that the title to the land was formally and duly divested out of the Gabriel de Rivas heirs by virtue of the sale under the orders of the Spanish court, and that Gregario Caro, then being of lawful age and in life, became the purchaser of same at that sale, and that he duly conveyed the same to Chabeaux, Fitzsimmons and Smythe, from whom the Pensacola City Company have derived title by mesne conveyances in due form, and that none of the defendants named in the bill as claiming to be the heirs at law of Gabriel de-

Rivas, nor any one claiming through them, have any right, title or interest in any of said land by virtue of any inheritance thereof from Gabriel de Rivas as his heirs at law.

The appellants next contend that notwithstanding they may be held to have acquired no title through the Gabriel de Rivas heirs, that still the decree should be reversed because they have shown that some of the defendants have acquired title to some portions of the tract by prescription by having adversely held possession thereof for more than seven years prior to the institution of this suit. The proof shows that while some of the defendants have had possession of portions of the tract, that the Pensacola City Company through its agents, lessees and assignees have all along had the possession and control of the larger portion thereof. The law is well-settled that in such cases of mixed possession, the possession of all parts of the tract not actually and adversely occupied will be presumed to be with the owner of the true title in possession of a part. The real title draws to the actual occupant holding it a constructive possession of all the land covered by the title that is not actually adversely occupied; and the adverse occupant, not having any title, is to be confined to the actual limits of his occupancy. Barr vs. Gratz's Heirs, 4 Wheat. 213; Hunt vs. Wickliffe, 2 Pet. 201; Codman vs. Winslow, 10 Mass. 146; Brimmer vs. Proprietors of Long Wharf, 5 Pick. 131; Armstrong vs. Risteau's Lessee, 5 Md. 256, S. C. 59 Am. Dec. 115; Semple vs. Cook, 50 Cal. 26. In considering the claim of the appellants to an acquisition of title by adverse possession to certain portions of the tract, the following elementary principles become pertinent and must be borne in mind: That the burden of proof of all the essential facts requisite to give title by

adverse possession is upon him who asserts such pre-
scriptive title. That his proof must show a continu-
ous, unbroken, open, notorious, actual and adverse
possession under a claim of right for the full statutory
period of seven years. The limits, location and extent
of his occupation must be definitely and clearly estab-
lished by affirmative proof, and can not be established
or extended by presumption. Tyler on Ejectment,
Chap. 50, and citations. Under this claim of adverse
possession the appellants contend that the portion of
the tract occupied by the appellant Ephraim Pleasure
should have been awarded to them. Besides failing
to definitely and clearly locate, describe and point out
the particular portion of the tract, and its extent and
limits, claimed to have been occupied by Ephraim
Pleasure, it is conclusively shown by the proofs that
he originally acquired his possession thereof as a ten-
ant of the Pensacola City Company, and that after
holding under that company for some time, he took a
lease thereof from A. V. Caro and attorned to him, but
there is no proof that he gave any notice to his original
landlord, or that such landlord had any notice, of his
renunciation or repudiation of his original tenancy,
and of his holding under another, until 1886, the year
before the bill herein was filed. The law is well-settled
that a tenant, after the expiration of his lease, may
disavow and disclaim his tenancy and the title of his
landlord, and drive the landlord to his action for the
recovery of possession within the period of the statute
of limitations, but before any foundation can be
claimed for the operation of the statute, in such a case,
a clear, positive and continued disclaimer and disa-
vowal of the landlord's title, and an assertion of an
adverse right, must be brought home to the landlord
by clear, positive and distinct notice. Tyler on Eject-

ment, 877; Horner vs. Leeds, 2 Leading Cases in American Law of Real Property, 72 and citations, S. C. 25 N. J. L. 106; Lowe vs. Emerson, 48 Ill. 160; Sherman vs. Champlain Transportation Co., 31 Vt. 162.

The appellants next contend that portions of the tract have been held adversely by the defendants George Bell, Eugene Cardenas, Louis Cobb, E. Claiburn, Burk Hamilton, John Harris, Jeff. Lennox, James Milne, Betsy Lundy and Cæsar Wiggins, and that they are entitled by adverse possession to all of such portions. In all of these cases there has been an entire failure on the part of the appellants to establish by proof the essential facts necessary, as already pointed out, to clothe them with a prescriptive title to any definite portion of the tract. There is no proof of substantial enclosure, cultivation, improvement or occupancy of any definite portion of the tract by any of them continuously for seven years before the filing of the bill, and it is nowhere shown what particular portion thereof any of them claim to be possessed of.

From a careful review of the whole case our opinion is that the complainants in the bill have fully established by the proofs the allegations of their bill, and that the decree appealed from is entirely proper, and it is therefore affirmed.