MEYLERT M. ARMSTRONG, *et. al., Plaintiffs in Error,* v. RALPH W. WILCOX, *et. al., Defendants in Error.*

1. The mere fact of tenancy does not necessarily prevent the acquisition of an adverse tax title to the land occupied.

2. A tenancy at will or by sufferance may become an adverse holding against the landlord without surrender of the possession, but the disclaimer and disavowal of the landlord's title must be brought home to him by clear, positive and distinct notice.

3. If the ancestor were alive when the adverse possession

began, the disability through non-age of his descendants does not check nor impede the running of the statute.

4 Those claiming the exception to the statute of limitations in ejectment by reason of minority should show that the right of action first accrued during such minority.

5. The evidence supports the verdict.

This case was decided by the court En Banc.

Writ of Error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Cooper & Cooper,* for Plaintiffs in Error.

*Gibbons & Maxwell,* for Defendants in Error.

COCKRELL, J.—This is an action of ejectment for ten acres of land near the city of Jacksonville in Duval county. There was verdict and judgment for the defendants and the plaintiffs take writ of error.

We may assume that the plaintiffs proved a valid paper title in their ancestor Peter E. Armstrong in 1876 and that possession remained with such title until 1896 when the defendants' ancestor Alexander Schilling acquired a tax deed under which he asserted adverse possession in fact as color of title. Schilling died in 1900 and his children continued this possession and were holding adversely when this action was begun in February, 1908.

The evidence presents two theories as to the origin of Schilling's possession. One is that he entered about 1887 as a trespasser from the first; the other that he was placed there as tenant by F. F. L'Engle, Armstrong's agent, and we are inclined rather to the latter as the

better supported by the proof. If the former be correct there can be no show of doubt that title by adverse holding beyond the statutory period has been made out, but the plaintiffs insist upon the theory of a tenancy.

Mr. L'Engle the agent died in 1899 and all evidence of the tenancy comes from his son, Porcher L'Engle. From him we learn that knowledge of the acquisition of the tax deed by Schilling was brought home to his father, who proceeded to denounce the act to Schilling as a breach of duty and good faith, but no steps appear to have been taken to undo the wrong or correct the disseizin. In 1898 two of the children of Peter E. Armstrong, all of them being non-residents of Florida, visited the place and by the testimony of a disinterested witness plainly and unequivocally then and there recognized and acknowledged Schilling's title. The evidence is also clear and without serious contradiction that after the acquisition of the supposed title by the tax deed, Schilling openly, continuously and notoriously exercised every act and claim of possession and title, as shown by the oaths of various neighbors.

Upon the rulings on the evidence no special difficulty appears and to set them out in this opinion might tend more to confusion than to substantial aid in the future administration of the law. The most serious contentions are as to right of a tenant retaining possession to acquire title by adverse holding as against the landlord and as to the propriety of the judgment in respect to those plaintiffs who attained their majority within seven years of the commencement of the action.

The court charged the jury that the tax deed did not convey title, but it purported to convey the State's title to the property, acquired through non-payment of taxes and was properly before the jury as color of title.

It is urged that a tenant cannot acquire a tax title as

against his landlord, and that the whole proceeding was merely a payment of the tax.   We do not understand how this question is raised on this record, but we have heretofore held that not every tenant is charged with the duty of paying taxes on the leased premises or is estopped from acquiring an adverse tax title thereto (Brown v. Atlanta National Building & Loan Assn., 46 Fla. 492, 35 South. Rep. 403), and there is no direct evidence here that the tenant was bound to pay taxes.

Instructions were requested upon the theory that before a tenant can hold adversely to his landlord he must first surrender possession.   The tenancy here, if it existed, was a mere tenancy at will or by sufferance with no fixed term.  `These instructions were refused and   the court charged in accordance with the ruling of this court in Wilkins v. Pensacola City Co., 36 Fla. 36, 18 South. Rep. 20.   We there said, page 60; "The law is well-settled that a tenant, after the expiration of his lease, may disavow and disclaim his tenancy and the title of his landlord, and drive the landlord to his action for the recovery of possession within the period of the statute of limitations, but before any foundation can be claimed for the operation of the statute, in such a case, a clear, positive and continued disclaimer and disavowal of the landlord's title, and an assertion of an adverse right, must be brought home to the landlord by clear, positive and distinct notice."    The proof comes up to the rule thus enunciated and the holders of the legal title clearly have slept upon their rights.

The last assignment we shall notice is that Grace Breckenridge, Calvin R. Armstrong, Ervin S. Armstrong and Dorothy Quigley, four of the plaintiffs, were minors within seven years prior to February, 1908, when this action was begun.   It appears affirmatively that   Mrs. Quigley is a grand-daughter of Peter E. Armstrong and

as to the others named merely that they are descendants; there is no proof that they are his children and the presumptions of nature, if we are to indulge in presumptions, from the vast difference in ages, would be that they are not his children but grandchildren. The date of the death of Mrs. Quigley's father is not shown. It is asserted that the defendant should have shown these facts; in other words that one claiming title by adverse possession of seven years must go further and show that the holders of the paper title do not come within the exceptions to that statute. No authority is cited to support the assertion. It is sufficient ordinarily to bring oneself within the general provisions of the statute and the exceptions thereto are conditions not presumed to exist and therefore to be affirmatively shown. If the ancestor of these plaintiffs were alive when the adverse possession began, the disabilities through non-age of his descendants could not check or impede the running of the statute. Doyle v. Wade, 23 Fla. 90, 1 South. Rep. 516. The statute recognizes an exception to the seven year limitation period in favor of infants if such at the time the title shall descend or accrue, but the saving clause applies only to persons to whom title first accrues, for when the statute once begins to run it continues to run.

In Shropshire v. Shropshire, 15 Tenn. 164, it was held that to avoid the statute the plaintiffs must show when the right of action accrued. "It is an affirmative fact within their knowledge, which would come in avoidance of the plea, and the proof of which would prevent the bar apparently created by the length of the defendants' possession." This is not a case of an exception to an exception, but a rule of law engrafted upon the statutory exception and to secure the benefit of the exception one should fully prove himself entitled to it, especially is

this so when the knowledge of the essential facts lies more easily within his breast.

The cause was fully and fairly submitted to the jury and their finding finds support in the evidence.

The judgment is affirmed.

All concur except PARKHILL, J., absent on account of illness.