**MAXWELL A. KILVERT, for the use and benefit of W. T. KENNEDY, v. MARY E. CLARK and B. Y. CLARK, her husband.**

10 So. (2nd) 795 June Term, 1942
December 4, 1942 En Banc
Rehearing Denied January 5, 1943

36

*C. E. Farrington* and *John D. Kennedy,* for appellant.

*G. H. Martin* and *E. B. Griffis,* for appellee.

CHAPMAN, J.:

This is an ejectment suit which originated in the Circuit Court of Broward County, Florida. Three separate jury trials resulted in verdicts for the defendant below; the trial court set two of the verdicts aside and in order denying the third and last motion for a new trial in part said: "I am of the opinion it would be useless to try this case again. It is very doubtful that a jury would ever bring in a verdict for the plaintiff. In addition thereto there should come a time when there would be an end to litigation. Because of these facts, I believe the motion for a new trial should be denied." The testimony offered in each of the trials is by counsel conceded to be about the same.

Plaintiff's amended bill of particulars prepared and filed in conformity with Rule No. 85 controlling Common Law cases in Florida, sets forth chronologically the chain of title upon which the plaintiff below relied in the trial of said cause, and in so doing disclosed an unbroken chain of title by a patent from the United States Government to the State of Florida and a conveyance by the State of Florida by the Trustees of the Internal Improvement Fund dated March 22, 1883, to Sir Edward James Reed. The land involved in this suit, with other lands, was by mesne conveyances conveyed unto the use of plaintiff and the deed adduced into evidence was from Maxwell A. Kilvert and wife Margaret C. Kilvert, to W. T. Kennedy on April 26, 1938, and the deed was promptly recorded in Broward County public records. The amended bill of particulars was offered and received in Broward County Public records. The amended bill of particulars was offered and received in evidence in behalf of the plaintiff below.

The plaintiff, during the month of June, 1929, rented the property here involved (being a house and lot located in Fort Lauderdale) to the defendant, Mary E. Clark, for the sum of

$15.00 per month. She went into the possession of the property as a tenant of the plaintiff below and paid to him, or agent, monthly rentals after June, 1929. Plaintiff's agent, George W. Turnbull, placed Mary E. Clark in posesssion of the property and collected rents wich he sent to the plaintiff. at an address in the State of New York. On February 18, 1930, Turnbull wrote Kilvert that the defendant was to pay $15.00 per month "with the understanding they were to do any and all repairs to house, in other words, take it as it is." The defendant "was then two months" in arrears with the rents. The reason assigned for the defendant not paying rents was that "they were on a direct deal with you."

Mary E. Clark, in a letter to Kilvert dated June 24, 1930, stated: "Please advise at once what you would like for me to do about the rent as I have just talked to Mr. Turnbull and he is very ugly about it." "Mr. Turnbull informed me just now we would have to give up the place if we did not get up the rent." "We would like to trade for the place." On January 15, 1930, Mary E. Clark in a letter to Kilvert in part said: "I am living on your place at Fort Lauderdale and would love to make a trade with you for it." "The house needs some repairs that will have to be fixed. Would it be alright to do it and take it out of the rents? Would you consider a trade for property in Highlands County or Okeechobee County as I have some in both?"

The defendant, Mary E. Clark, on April 26, 1932, wrote Kilvert, viz:

"Dear Mr. Kilvert:

"I am very sorry I was away when you called this winter. I was called away on account of serious illness. I was very anxious to talk to you about the place. Mr. Kilvert I will be frank with you I have a place in Okeechobee City also a place in Highland County a few bearing citrus trees on the 10 acres in Highlands Co. Now what I want is a home here. I have a family and am trying hard to do the right thing by them and I find it easier for me to support them here as I can get steady work most of the time. Now I was wondering if you would trade some way with me, you don't know how I would

appreciate it if you would consider it and let me hear from you.

"I will say that the citrus land is as good as there is any where.

"Hoping to hear from you soon."

On April 17, 1933, Kilvert wrote the defendant Mary E. Clark, and in part said:

"Dear Mrs. Clark:

"The last time I heard from you was last year after I had missed you in Fort Lauderdale. I have been hoping I could get down there this winter but it doesn't look as though I could for another couple of months or more anyway.

"I don't care to take up the proposal you made of an exchange as I don't want to get any orange property or anything else which would require even more attention than the house. I would be glad to make any kind of an arrangement for selling the house by paying for it like paying rent, but I don't want to make any swaps.

"I got a bill, which I enclose, from the city the other day offering to settle some $300.00 worth of taxes for around $90.00. I couldn't lay my hand on it at the moment. I was sick when it came but I wired them that I would act on it as soon as I got back to the office. I am taking it up with you at once, and will make you this proposition, that if you will clean up all state and county taxes, and I believe a small special assessment installment, I will wipe out all your rent up to the first of this year. I would have to look at my records to see just what this was, but it must run to several hundred dollars.

"If you want to take advantage of this offer, please go to the city Tax office and also to the County Tax office and tell them that I have authorized you to act in my behalf and get the tax receipts and send them to me and this letter will serve as a cancellation for past rent, valid when I receive the receipts for the taxes, and I will send you an additional receipt if you want it."

Some two years or more after the letter *supra,* the defendant, Mary E. Clark, wrote the plaintiff and the letter is dated April 19, 1936, and in part said:

"I shall try again and see if I can hear from you, as agreed I was to write you when you were here last.

"The storm did quite a little damage to the house and I have had it repaired. All new windows on the east side and the roof repaired and the house had to be all leveled up as it settled some from the storm. It needs quite a little more work done on it now in order to stand another storm but as I only have a tax deed to the place I hesitate to put very much expense on the place as I cannot secure a government loan with only a tax deed. I would like to know what kind of a proposition you could offer me in order that I can get a good deed to it as when you were here you spoke of selling it to me and I would like very much to own the place, as I can make a living here and I am responsible for the livlihood of my family and I feel that I can get ahead if I owned the place and did not feel that I would have to move somewhere alse."

On May 15, 1936, Kilvert wrote Mrs. Clark viz:

"Dear Mrs. Clark:

"I received your letter of the 19th of April on my way down from New York on my arrival here. I left Garden City and New York a month ago and your letter was forwarded but I was traveling meantime with no forwarding address so mail had to be sent ahead to await my arrival - -

"I expect to be in Fort Lauderdale within a week or ten days and will be glad to discuss some arrangement with you for you to get the house with good title.

"Mr. Hoskins will know when I arrive but I can't tell any more accurately than I have stated as I have some business here that I can't tell yet how long it will take."

The defendant's title to the property, as disclosed by the bill of particulars and the testimony, is based on a tax deed from the State of Florida to S. J. Brown under date of December 21, 1932, and by warranty deed from S. J. Brown and wife, Sibyl Brown, to Mary E. Clark dated March 6, 1933, and recorded April 30, 1934, and actual, open, adverse and hostile possession for the period prescribed by statute. The grantors in the last conveyance were referred to therein as located in Decatur County, State of Alabama, when the deed was exe-

cuted to Mary E. Clark. It is admitted that Sibyl Brown is the daughter of Mary E. Clark and that Sibyl Brown, or her husband S. J. Brown, or either of them, were not in possession of the property under the tax deed from the State of Florida to them. It is not shown that Mary E. Clark paid money or gave anything of value for the deed from her daughter and son-in-law when delivered to her, and it was not recorded, or filed for record, for more than a year after date of delivery. The defendants have lived on the property since May or June, 1929.

This ejectment suit was filed January 25, 1939. Defendants obtained a deed on March 6, 1933, at a time when they were in possession of the property as tenants of Kilvert under an agreement to pay monthly rentals of $15.00 and "to do any and all repairs to house." Defendants admit they were delinquent in the payment of the rents and only a few monthly payments were made in the last of 1929 and early 1930.

In the case of Wilkins v. The Pensacola City Co., 36 Fla. 36, 18 So. 20, this Court said:

". . . The law is well settled that a tenant, after the expiration of his lease, may disavow and disclaim his tenancy and the title of his landlord, and drive the landlord to his action for the recovery of possession within the period of the statute of limitations, but before any foundation can be claimed for the operation of the statute, in such a case, a clear, positive and continued disclaimer and disavowal of the landlord's title, and an assertion of an adverse right must be brought home to the landlord by clear, positive and distinct notice. . . ." See Armstrong v. Wilcox, 57 Fla. 30, 49 So. 41, 131 Am. St. Rep. 1080.

The case of Chicago Trust Co. v. Knabb, 142 Fla. 767, 196 So. 200, involved a lease on timbered lands situated in Baker County, Florida. The Chicago Trust Co. held the legal title to the lands and leased the timber on the lands to Knabb. Knabb, the lessee, failed to pay the stipulated rentals named in the lease, but purchased outstanding tax certificates and filed suit against the owner of the property to foreclose the tax certificates. We hold that plaintiff Knobb was estopped, as a matter of law, from denying that he was a tenant of the

Chicago Trust Co., or its successors, at the time of the purchase of the tax certificate. We, in part, said:

"It, therefore, follows as an established principle that Knabb could not acquire any more by purchasing tax certificates than he could have acquired by paying the taxes and the extent of that right would be a lien on the property for the amount paid for taxes. And this is true although Knabb may not have been in default in his payments under the terms of the alleged lease at the time he paid the taxes. When, however, he continued to use the lands and remove timber and timber products therefrom under the terms of the lease and failed to pay therefor as was provided for in the lease, he became bound to credit his landlord the amounts thus accruing against the amount which he had paid for the benefit of the landlord for taxes. See Harbeson Lumber Co. v. Geneva Mill Co., 116 Fla. 342, 156 So. 710. Also see Williams v. Towl, et al., 65 Mich. 204, 31 N. W. 835; Morris v. Apperson, 11 Ky. 838, 13 S.W. 441; and Jackson v. King, 82 Ala. 432, 3 So. 232; Gorton, *et ux.*, v. Paine, 18 Fla. 117; Brown, et al., v. A. N. B. and L. A., 46 Fla. 492, 35 So. 403. . . .

". . . The complainant (Knabb) admits that he took the timber and timber products from the lands for many years without paying therefor under the terms of the alleged lease or otherwise except by the payment of the taxes here involved. If he intended to set up an adverse claim because of these tax certificates it was his duty then to so advise the landlord and put the landlord on notice that such was his purpose. This he did not do. Certainly, under the facts disclosed by the record the complainant had the right to pay the taxes and to take credit for the amount thereof against whatever he might be obligated to pay to the landlord for the timber products which he took from the land. This is in equity and good conscience what he should have done, unless he had chosen to surrender possession and stand upon the lien evidenced by his tax certificates."

It was the legal duty of Mrs. Mary E. Clark, as the admitted tenant of Kilvert, by act or deed to disavow, disclaim and positively repudiate the relationship of landlord and tenant then existing between her and Kilvert, and likewise by

positive act or deed dispute and challenge the title of her landlord and thereby force her landlord to his action for the recovery of the property within the period of the statute of limitations. The law requires and made it the duty of Mary E. Clark, prior to the operation of the statute of limitations, by act or deed to make a clear, positive and continued disavowal and disclaimer of her landlord's (Kilvert's) title and an assertion on the part of Mary E. Clark of an adverse right which must be brought home to the landlord by clear, positive and distinct notice as enunciated by this Court in Wilkins v. The Pensacola City Co., *supra*.

The testimony given by Mary E. Clark, and the testimony of other witnesses testifying in her behalf, fails to measure up to the requirements of the rule. The testimony, considered as a whole with references and deductions therefrom, does not show that Mary E. Clark disclaimed, disavowed and repudiated the relation of landlord existing between them or that the repudiation or disavowal by the tenant was brought to the attention of the landlord by clear, positive and distinct notice. We are unable to find in the record testimony to establish an adverse right to the landlord's title asserted by Mary E. Clark and clear, positive and distinct knowledge or notice thereof given to the landlord. Kilvert wrote Mary E. Clark on April 17, 1933, about the payment of the taxes on the property with the money due him for rent wherein she could settle $300.00 worth of taxes for around $90.00," and past due rents would be cancelled as of January 1, 1933. Mary E. Clark did not reply to this letter, but at the time she held an unrecorded deed from her daughter to the property. A full and frank disclosure by her of the situation then existing may have brought her within the rule.

She offered to exchange Highlands and Okeechobee counties property for the place, but Kilvert refused the offer of exchange. She did not assert an adverse title at the time. She recognized the title of Kilvert to the property in her letter to him dated April 19, 1936;—"I would like to know what kind of a proposition you would offer me in order that I may get a good deed to it as when you were here you spoke of selling it to me and I would like very much to *own* the

place, as I can make a living here and I am responsible for the livlihood of my family and I feel that I can get ahead *if I owned the place* and not feel that I would have to move somewhere else." It is to be observed that title to the property is admitted to be in Kilvert and the relation of landlord and tenant is deducible from the expression, "I feel that I can get ahead *if I owned the place* and did not feel that I would have to move somewhere else."

Counsel for plaintiff below moved the court for a directed verdict on the ground "that it appeared from the evidence adduced in the case by the defendant that there had been no evidence to show that she had ever claimed the property adversely to the landlord." In the motion for a new trial the same contention was made and further that the evidence was legally insufficient to support a verdict for the defendant.

It is our conclusion that the trial court erred in its order overruling and denying the motion of the plaintiff below for a directed verdict and accordingly the judgment appealed from is reversed and a new trial awarded.

It is so ordered.

BROWN, C. J., WHITFIELD, BUFORD, THOMAS and ADAMS, JJ., concur.

TERRELL, J., dissents.