55 So.2d 723 (1951)
BALLARD
v.
GILBERT et al.
Supreme Court of Florida, en Banc.
December 18, 1951.
*724 Mathis & Mathis, Panama City, for appellant.
J.M. & H.P. Sapp, Panama City, for appellees.
TERRELL, Justice.
H. Ballard filed his bill of complaint alleging that prior to 1922 he acquired title to the lands described therein, that he erected an eight-room dwelling thereon in which he and his wife lived as their home until June 1928 when they went to New Jersey in search of employment, that before he left he rented his home and made an agreement with his sister Sarah Gilbert to collect the rent and send him the proceeds, that later the tenants quit paying rent and he made a contract with his sister and her husband to occupy the house on condition that they take care of the property and pay the state, county and municipal taxes as they came due. They agreed to give him six months notice if they moved from the house. He did not return till October 1945 but found his sister and her husband still occupying the property.
On investigation it was revealed that they had not paid the taxes as they agreed to do. He found however, that in July 1936 they paid the taxes due for the years 1928 to 1935 inclusive, eight years in all, that no other taxes were paid, in default of which his property was, on July 9, 1939, lost to the state under the Murphy Act, Acts 1937, c. 18296, that on the 27th day of February, 1941, Sarah Gilbert applied to and secured a deed to said property from the Internal Improvement Fund for nonpayment of taxes, that in so doing she *725 knowingly and deliberately perpetrated a fraud on appellant and now seeks to profit by it, that she is still in possession of appellant's property and denies appellant's title.
The bill prayed that defendants be decreed to hold the property in trust for appellant, that appellees be required to convey the property to appellant and that the deed secured by them be decreed to be void and canceled of record. There was an answer which denied the material allegations of the bill and alleged that defendants took possession of the premises as abandoned property. On final hearing the chancellor found for defendants and dismissed the bill of complaint.
The crucial point for adjudication is whether or not the relation of landlord and tenant was proven. If this relation is shown the other questions resolve themselves.
The chancellor took the evidence and found that the relation of landlord and tenant was not proven. We are mindful of the force and effect that must be given to his finding. At the same time we do not overlook the well recognized exception to this rule, the effect of which is that if the chancellor's decree is against the manifest weight of the evidence or contrary to the legal effect of the evidence, this court should not hesitate to set it aside. Everglades Cypress Company v. Tyner, 131 Fla. 740, 179 So. 764; Farrington v. Harrison, 95 Fla. 769, 116 So. 497; Holland v. Florida Real Estate Commission, 130 Fla. 590, 178 So. 121.
Examined as a whole we think the evidence strongly preponderates in support of the landlord and tenant relation. It is conclusively shown that the locus in quo was the property of appellant and that he constructed his home on it and lived in it up to the time he went North to secure employment. From this point out there are conflicts in the testimony but we think the decided probative value of the evidence supports appellant's contract with appellees as declared in the forepart of this opinion. The contract was reasonable, the house was almost new, it was a growing community and there is little or no evidence of abandonment. When this is the case, it is necessary that a much more conclusive case of abandonment be shown than is shown here. Taking one's property is a serious matter and should not be permitted on inconclusive or loose testimony.
The evidence also shows that appellant at all times imposed confidence in appellees. They were his sister and brother-in-law. He trusted them to collect his rent and when the tenant failed to pay made them a liberal offer to take over the property. They moved into it and paid taxes as heretofore stated. They let the property sell for taxes and later acquired the certificates and a tax deed. All tax payments were paid in appellant's name or in the name of his representatives and when the tax deed was acquired, that fact was kept from him. He did not know that appellees claimed his property till 1946 when he secured a permit to repair it. The evidence of appellees is in the main evasive and inconclusive. When taken in connection with the deception they practiced on appellant, it is far from sufficient to show acquisition in good faith.
Appellees contend that the sole question is whether or not the evidence shows a constructive trust in favor of appellant. In view of what has been said in response to question one, we think this question is secondary but necessarily requires an affirmative answer. The evidence, in other words, not only shows a landlord and tenant relation, but it shows that the tenant acquired the landlord's property by fraud and deception. Since feudal times it has been the rule that the relation of landlord and tenant is not a mere technical one, but implies a relation of trust and confidence that should not be abused. The tenant being in possession, must act in good faith. He should not be permitted to set up a title of his own or that of another so long as his contract exists.
This court is committed to the doctrine that after the expiration of his lease a tenant may disclaim the title of his landlord and force him to an action for recovery within the period of the statute of limitations, but before any foundation can be laid for the operation of the statute, a *726 clear, positive and continued disclaimer and disavowal of the landlord's title and the assertion of an adverse right must be brought home to the landlord by positive and distinct notice. Wilkins, Runyan, Keyser v. Pensacola City Co., 36 Fla. 36, 18 So. 20; Armstrong v. Wilcox, 57 Fla. 30, 49 So. 41; Kilvert v. Clark, 152 Fla. 35, 10 So.2d 795.
It is accordingly our view that a landlord and tenant relation was established, that there is no showing that it was disavowed and that such title as appellees acquired was held by them in trust for the benefit of appellant. It follows that the chancellor applied the wrong rule of law to the evidence for which his judgment must be and is held reversed.
Reversed.
CHAPMAN, THOMAS and MATHEWS, JJ., concur.
SEBRING, C.J., and HOBSON, J., dissent.
ROBERTS, J., not participating.
HOBSON, Justice (dissenting).
I cannot agree with the majority opinion because appellant's complaint was predicated upon allegations of fraud which he contended were of such character as to entitle him to a declaration of a constructive trust in his favor. Appellant relied upon a breach of an oral agreement. It is well established in this jurisdiction that although a constructive trust may be established by parol testimony such evidence must be "so clear, strong, and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust." Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 424, 54 A.L.R. 1173, and cases cited therein. See also Columbia Bank for Cooperatives v. Okeelanta Sugar Co-op., Fla., 52 So.2d 670. The almost universal rule is that in such a case the oral testimony must be received with caution and should be of a conclusive or well nigh conclusive character.
It is evident from the final decree which the Chancellor entered that the proof in support of the bill of complaint in this case was not of such conclusive character as to remove from the mind of the Chancellor who in person heard all of the witnesses "every reasonable doubt as to the existence of the trust." My study of the transcript of the testimony does not convince me that we should hold him in error.
In my judgment the majority opinion is based more upon the allegations of the bill of complaint than upon the testimony. Certainly the majority must have accepted the testimony of the appellant and his witnesses at face value and disregarded the testimony of the appellees and their witnesses which was in direct conflict therewith. If the rule proper to be applied in this case were the one which requires only a preponderance of the evidence I would not be inclined to agree to a reversal. My reason for this position is that the testimony was definitely conflicting and the Chancellor had advantages over us which we have many times outlined, particularly in Harmon v. Harmon, Fla., 40 So.2d 209; State ex rel. Nelson v. Quigg, 143 Fla. 227, 196 So. 417 and cases therein cited. He resolved the conflicts against the appellant and in favor of the appellees. I find in the record competent, substantial evidence which sustains the ruling made by the Chancellor.
After carefully reading the transcript of testimony on three different occasions I confess I can see that one might disagree with the Chancellor if he should disregard the burden of a high degree of proof which appellant is required to carry and should cast aside completely the "substantial evidence" rule but it is not the province of an appellate court to try cases de novo upon cold, stolid, impassive typewritten transcripts which are bereft of every telltale human emotion and reaction. More certainly we should not substitute our judgment for that of the Chancellor when he has personally heard all of the witnesses in a case involving fraud and an alleged constructive trust dependent upon parol testimony to sustain it, when the evidence is conflicting.
SEBRING, C.J., concurs.