## JOHN WILLIAMS v. ALBERT TOWL AND MARY TOWL.

*Deed of land to administrator—Necessity of license for sale—Landlord and tenant—Lessee procuring tax deed on premises.*

1. Property conveyed to an administrator for the benefit of an estate, and not taken on execution or mortgage sale, is not subject to the provisions of How. Stat. §§ 5881-5883, and can be sold without license from probate court. *Little v. Lesia,* 5 Mich. 119.

2. A lessee liable for ground-rent erected a brick building on the leased premises, which was afterwards included in the assessed valuation, and taxes were levied accordingly, and he secured tax deeds of the land on its sale for *such* taxes.

   *Held,* that, apart from the duty of a tenant to set up no adverse claim while he holds under the possession obtained under the landlord's title, the taxes in question were levied on property the tenant had added to the realty, and annually exceeded the entire rent reserved in the lease; so that, if the landlord had been bound to pay the taxes upon such improvements, instead of receiving revenue he would be obliged to pay a large sum annually for the benefit of his tenant, which would be an absurd rule.

   *Held,* further, that under our tax laws a tenant is allowed to pay taxes, and set them off against his rent, and is abundantly protected by law in such payments; and there can be no necessity for purchasing tax titles for taxes levied during his holding.

Error to Muskegon. (Russell, J.) Argued February 8, 1887. Decided February 15, 1887.

Ejectment. Defendants bring error. Affirmed. The facts are stated in the opinion.

*William Carpenter*, for appellants.

*Stephen H. Clink* (*Arthur Jones*, of counsel), for plaintiff.

CAMPBELL, C. J.   Plaintiff recovered in ejectment a part of lot 4, in block 9, in Muskegon.   Defendants bring error, alleging various defects and incorrect rulings.

It is first alleged that the declaration contains no proper description of land.   It is sufficient to say, as we said on the argument, that we have no means of knowing judicially whether or not the two descriptions alleged to be identical do or do not cover the same land.   There is nothing to indicate that they do not.

It was further objected on the trial that Mr. Moriarty was allowed to fix certain measurements, when he did not show complete personal knowledge on the subject.   The only basis for this objection is that, after Mr. Moriarty had testified concerning a considerable number of distances and localities, bringing down the line to the easterly line of defendants' lot, he was asked this question, "How wide is that?" and answered, "Twenty-two feet." Defendants' counsel then, by way of cross-examination, asked him: "Have you measured this distance yourself?" Answered, "No, sir; I have not.   I have it only on the authority of the city surveyor." Counsel then said: "We move to strike out his testimony as being incompetent;" and immediately after: "Note an exception." Nothing further appears on the record to indicate whether he was examined further, or to show just what ruling the court may have made on the subject.   This single answer would not, without some further explanation, affect all of the testimony, and we cannot tell from the record what view the court took on the subject.

It became entirely immaterial when defendant on the stand

admitt. d possession of the premises in controversy, and identified them with a lease, where the description tallies with that in plaintiff's line of title. Whatever we might surmise about it, there was, therefore, no error.

The title of plaintiff was completely made out as admitted, from the government down, unless defective in this one particular. The title having been traced to James H. and George A. Graham, they and their wives, on February 9, 1878, conveyed the property to Daniel J. Moriarty, administrator of the estate of William P. Odell, deceased. Moriarty and the widow and heirs of Odell conveyed it to plaintiff. It is objected that Moriarty could not do this without license from the court of probate, which was not obtained.

This objection is based on sections 5881–5883 of Howell's Statutes, which provide that, where realty is bid off by administrators on mortgage foreclosures or execution sales for debts due the estate, it may be sold on license for the same purposes as if held by the decedent, and, if not sold, should be assigned and distributed among the persons entitled to the personalty of the estate.

This land was not purchased in on either foreclosure or execution. The administrator had brought suit in attachment, and levied on the land, but the suit was settled and the property deeded voluntarily.

It was held in *Little v. Lesia,* 5 Mich. 119, that property conveyed to an administrator for the benefit of an estate, and not taken on execution or mortgage sale, was not subject to these statute provisions, and could be sold without license. As that case construed the same provisions now relied on, there is no occasion to discuss the subject.

The only other question in the case is as to defendants' rights under certain tax deeds for taxes of 1876 down to 1880, which the defendant Albert Towl had made to his mother, the other defendant, but which she disclaimed any interest in, and which the jury found were his.

Defendant had a written lease running from July, 1865, to July, 1879, at a ground-rent of $80 a year. The taxes for which the sales were made amounted to about twice that sum annually. Defendant had built a brick building on the premises, which was included in the amount taxed. At the time these taxes were levied and sales made, defendant was in possession as tenant of the holders of the legal title. His lease ran out while Moriarty was his landlord, and he paid no rent afterwards, but held on without change, and never gave up possession. According to Moriarty, the outlay for these tax titles was to be arranged for in the first settlement for rent, but no settlement was made.

The court below held that Towl could not, while holding as tenant, buy those tax titles, and set them up against his landlord's title. This was undoubtedly correct. Apart from the duty of a tenant to set up no adverse claim while he holds under the possession obtained under the landlord's title, all of these taxes were levied on property which he had added to the realty himself. The rent which he paid is mentioned repeatedly in the receipts as ground-rent, and the annual taxes for which these sales were made exceeded the entire rent by about its full face; so that, if the landlord had been bound to keep down the taxes upon the improvements, instead of receiving revenue he would have had to pay a large sum annually for the benefit of his tenant. This would be an absurd rule.

Under our tax laws a tenant has always been allowed to pay taxes, and set them off against his rent, so that he is abundantly protected by law in such payments. There could never be any necessity of purchasing tax titles for taxes levied during his holding, and the law will not permit any such fraud on the landlord.

We see no error in the judgment, which is affirmed.

The other Justices concurred.