DR. RODNEY B. HARVEY v. ALVAN B. ROWE, JOHN B. SINGLETARY, and MRS. ATHENE MAGRUDER, Administratrix of the Estate of Lawson Magruder, Deceased.

192 So. 878
Division A
Opinion Filed January 9, 1940
Rehearing Denied January 23, 1940

*H. C. Tillman* and *McMullen, McMullen & Pogue,* for Appellant;

*Alvan B. Rowe, John B. Singletary* and *W. M. Smiley,* for Appellees.

THOMAS, J.—Appellant appealed from two orders entered by the chancellor, one dated February 11, and the other March 11, 1939. The first overruled exceptions to the report of a special master to whom the case was referred with instructions to determine "what sum or sums of the counsel fees incurred as shown by the statement * * * filed before the court remains unpaid." Obedient to the order, it was reported that the amount of unpaid fees was $31,090 as shown "by the said statement of Frank R. Schell."

The second order directed the payment of approximately $2,300 out of money on deposit with the court, to John B. Singletary and Alvan B. Rowe, attorneys, and to Athene

Magruder, as administratrix of the estate of a third attorney, Lawson Magruder.

The question we are to decide is: What amount of attorney's fees is chargeable to appellant, Dr. Rodney B. Harvey? It is seriously complicated by the divergence of opinion in the briefs about the actual facts developed in the prolonged litigation and the difficulty of determining from the voluminous record precisely what part of it is relevant to this particular phase of the controversy.

Manatee River Bank & Trust Company filed a bill of complaint against Frank R. Schell, Jagan N. Sharma and Food Machinery Corporation in September, 1935, asking the court to determine the duties of complainant in the distribution of moneys received for Schell's share in royalties from Food Machinery Corporation as a result of a contract signed by that corporation, Schell & Harvey. A separate agreement between Schell and Jagan N. Sharma was also involved. Harvey was not named in this pleading because only Schell's interest in the funds had been assigned to the bank or sold to Sharma.

The litigation proceeded then to a test of jurisdiction between the State and Federal courts and it was decided by the Circuit Court of Appeals, January 13, 1937 (Schell v. Food Machinery Corp., 5 Cir. 87, F. 2d 385), that the former should entertain the cause.

Meanwhile, March 17, 1936, Rodney B. Harvey had represented to the court that he was interested in the litigation and had sought permission to intervene, which was immediately granted, whereupon he joined Schell in an answer to the bill and a cross bill 130 pages in length, exclusive of exhibits. These pleadings were signed by Alvan B. Rowe as solicitor. February 9, 1937, Harvey, by McMullen, McMullen & Pogue, solicitors, asked permission

of the court to withdraw the petition for intervention and to withdraw from the answer and cross bill because he felt that he could not "conscientiously permit the litigation to continue in his name."

June 11, 1938, no ruling having been made on the petition to withdraw, although sixteen months had elapsed, Harvey, by McMullen, McMullen & Pogue, filed another petition in the same tenor and in it disclaimed any responsibility for the payment of the fees of the attorney originally appearing for him and Schell. Both petitions were denied June 11, 1938, the chancellor reciting in his order that a hearing was held on the first one in July, 1937, and postponed on the request of subscribing counsel; that he was not further advised although information was requested; that said attorneys did not wish the petitions considered as requests for substitution of counsel; and that proper practice dictated such a substitution and "protection of retiring counsels' rights."

In the interim, between the dates of the requests for permission to withdraw and orders on them, several volumes of testimony were taken.

Eventually the chancellor reduced the fee of $100,000 fixed by the master, to $31,000 and deferred the apportionment of it between Schell and Harvey.

In this state of the record, we are unable to say that Harvey may escape any liability for payment of compensation to the attorney who represented him in the filing of the petition for intervention and the answer and cross bill or that he can successfully avoid liability for payment for the work which followed. That he changed his mind about his connection with the controversy is apparent from the first petition to withdraw but no order was made for many months while the cause progressed and this delay is not

chargeable to either the court or his original counsel. The judge's order sets out that postponement was granted upon request of the attorneys, new to the suit, who subscribed the petition and they are quoted as having said they did not wish it considered a petition for substitution.

"That a client has the right to discharge his attorney at any time, either with or without cause, is clearly established law. Yates v. Milwaukee, 10 Wall. 497, 19 L. Ed. 984; Silverman v. Pennsylvania R. Co. (C. C.), 141 Fed. 382; Kelly v. Horsely, 147 Ala. 508, 41 South. 902; Love v. Peel, 79 Ark. 366, 95 S. W. 998; Gage v. Atwater, 136 Cal. 170, 68 Pac. 581; Glover v. Dimmock, 119 Ga. 696, 46 S. E. 824; Wipfler v. Warren, 163 Michigan 189, 128 N. W. 178; Delaney v. Husband, 64 N. J. Law 275, 45 Alt. 265; *In Re* Dunn, 205 N. Y. 398, 98 N. E. 914, Ann. Cas. 1913E, 536. Indeed, in Crosby v. Hatch, 155 Iowa 312, 316, 135 N. W. 1079, the Court declared that:

" 'No contract of employment can prevent a client from dismissing one attorney and entering into a new arrangement with another.'

"If a substitution of attorneys cannot be made by consent of both client and attorney an order for such substitution must be obtained by making proper application to the court. Wilkinson v. Tilden (C. C.), 14 Fed. 778; Kerkeler v. Thaule, 73 N. Y. 608." The Flush, 277 Fed. Rep. 25, 27.

Client must do more than indicate dissatisfaction with his position in the suit or the arrangement he may have with his attorney: "The relation of attorney and client is a relation of the highest confidential character, and if at any time in the course of litigation, the interests of the attorney in a suit become adverse or hostile to his client, he should cease to represent his client and give due notice of his withdrawal in order that his client may secure other counsel."

United States Savings Bank v. Pittman, 80 Fla. 423, 436, 86 South. Rep. 567, 572.

We have recently held that a client has a "legal right to substitute counsel" and that there is a corresponding duty, where that right is exercised, to procure an order of the court permitting withdrawal of the original attorney and the substitution of his successor. Diem v. Diem, 136 Fla. 824, 187 South. Rep. 569.

Obviously such procedure was not followed here. The client's answer was on file in the court for nearly a year before counsel not originally in the suit filed his petition to retire. The application represented that it was not a petition for substitution. Action on the request was deferred sixteen months and we are not advised that this was in any degree the fault of the court, Harvey's solicitors of record or his adversaries'. Postponement of a ruling was suggested by the subscribing solicitors and when the matter was fully determined the court observed that proper procedure had not been followed to effect retirement of one counsel and the appearance of another.

The very reason for the rule that the court should order a substitution where one is desired is that in this manner regulation of the proceedings may be maintained, the court may know who has authority to act and the interests of attorneys as well as clients may be safeguarded.

We agree with the chancellor that no substitution of attorneys was accomplished, no proper request to that end having been made.

Much of the argument in appellant's behalf is directed to the erroneous action of assessing fees for services during the entire suit against one who was a party for only a part of the time the litigation was pending. There is no need for thorough discussion of this question in view of what

we have already stated, but again we draw attention to the court's order delaying the apportionment until some future time.

Appellees by way of cross assignment of error present the question of the correctness of the court's order in fixing the amount of attorneys' fees at $31,090.00 after an order had been entered by the court that the report of the master fixing the compensation at $100,000.00 had been confirmed. We do not so construe these orders. In the first the chancellor approved and confirmed the report of the special master "except as to the amount due and payable to Lawson Magruder, Alvan B. Rowe and John B. Singletary" and in the same order observed: "The court is of the opinion it would be manifestly unjust for counsel to recover against Dr. Harvey a sum in excess of that sought on his behalf by his counsel."

We do not find any inconsistency in the two orders to which reference was made in the first paragraph of this opinion and in our study of the case have discovered no impropriety in the court's action in fixing the amount of the fee in the sum of $31,090.00. Clearly the chancellor intended to approve the master's report except as to the amount of the fee and his sanction of compensation to be allowed attorneys was to be reserved until the subsequent order was entered in which the smaller amount was fixed.

Therefore, the orders appealed from are affirmed.

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

BROWN, J., concurs in opinion and judgment.