**G. E. MABRY, et al., v. L. KNABB**

10 So. (2nd) 330                            Division B
June 5, 1942              On Rehearing October 23, 1942
Rehearing Denied November 17, 1942

Mabry, Reaves, Carlton & White and O. K. Reaves for appellants.

H. L. Anderson, for appellees.

PER CURIAM:

This is our second consideration of this case. See Chicago Trust Company, et al., as trustee, v. Knabb, 142 Fla. 767, 196 So. 200, for fuller statement of facts. Chicago Trust Company employed Mabry, Reaves, and Carlton to foreclose a mortgage. Their fee for the foreclosure not having ben paid, they secured an equitable lien on the lands involved in the foreclosure. A sale was ordered and the lands were bought by ·O. K. Reaves for the benefit of Mabry, Reaves and Carlton. A sale of said lands for taxes was made

at the same time and that decree was purchased by Mabry, Reaves, and Carlton.

Soon after securing title by the foreclosure, Chicago Trust Company leased the lands to L. Knabb for turpentine, timber, wood, and tie purposes. The lease required Knabb to make periodic reports and payments for products taken from the lands. Successor trustees were appointed and at the time this suit was brought, Joseph A. Duner was trustee. Knabb continued to operate the land under his lease but made no reports or payments to the trustee after 1931.

This suit was brought by Knabb in 1938 against Duner as trustee and Mabry, Reaves and Carlton to foreclose tax certificates which he acquired against the lands while working it as a tenant. The trustee Duner answered and alleged that Knabb had not paid for products taken from the land as his lease contract required. He prayed for an accounting and that Knabb be required to pay the amount found due after setting off his tax claim. Mabry, Reaves and Carlton also answered praying that Knabb be required to account to them for the amount of their decrees. They further allege that Duner is insolvent and resides out of the State and that they are without remedy unless they can be subrogated to the rights of Duner against Knabb.

From a decree granting Knabb the relief prayed for and denying Mabry, Reaves and Carlton the relief they prayed for, the former appeal was taken. On the going down of the mandate a master was appointed and much testimony was taken. While the taking of testimony was in progress, Knabb moved to vacate the order of reference on the ground that since it was made, he had made a full and complete

settlement with Duner individually and as trustee for all claims held by him. This motion was denied on the ground that Mabry, Reaves and Carlton were entitled to an accounting and to have any unpaid amount against Knabb's claim for taxes in favor of Duner paid them.

On final hearing, the chancellor found, (1) that Knabb was at all times during the life of the lease in arrears in payments thereon in excess of the amounts paid by him for taxes and that on July 5, 1939, when the title passed out of Duner into Mabry, Reaves and Carlton, Knabb owed Duner a balance of $29,073.67, (2) that after Reaves acquired title Knabb took products from the land for which he has not paid Reaves in the amount of $1,859.18, (3) that when Reaves took title there was a balance due on the two decrees of Mabry, Reaves, and Carlton of $7,366.40, (4) that in October, 1940, while the suit was pending and after the trustee had been divested of title, Duner executed to Knabb a settlement paper relieving the latter of all claims and demands under his lease, (5) the effect of this release as between Knabb and Duner was to extinguish the trustee's claim for the rent asserted in his counter claim in its entirety and to leave Knabb's tax claim unimpaired and a first lien against the property. The effect of the release as to Mabry, Reaves. and Carlton was precisely the same since the property was of sufficient value to pay them and Knabb, (6) that the attorneys for Duner are not entitled to a fee against Knabb. The chancellor then decreed Knabb a lien on the land for $19,304.06 including $948.97 attorney's fee for foreclosing the tax certificates this being the sum the chancellor found to be due Knabb. From this decree, the present

appeal was taken. Appellee filed cross assignments of error.

On the question of whether or not Mabry, Reaves, and Carlton should be awarded the amount of their attorney's fee against Knabb, we do not feel authorized to reverse the chancellor. It is quite clear that Mabry, Reaves, and Carlton were entitled to be paid. They had title to the lands subject to Knabb's lease and tax claim and Duner defrauded them. They might have proceeded against Duner or the lands subject to Knabb's claim but we do not find that they have a claim against Knabb. It appears from the record that the lands were worth enough to pay Knabb's claim and that of Mabry, Reaves, and Carlton.

As to the award of $1,411.85 against Mabry, Reaves, and Carlton for counting turpentine faces, it is quite true that Knabb moved seasonably to dismiss the reference to the master as to this but the chancellor denied the motion. Knabb should have been able to furnish an accurate record as to this. Although the chancellor permitted the Court to proceed with the counting, we think there is not commitment to assess any part of the cost to Knabb and that it should be borne by Mabry, Reaves, and Carlton. Mabry, Reaves and Carlton must have profited by the count and should bear the expense of making it.

We also think the allowance of $1,250 as master's fee was excessive. We see no basis in the record for allowing a special master a larger fee than the statute allows counsel to litigate the cause. In our view, this amount should be reduced by $500. In all other respects, the decree appealed from is affirmed.

It follows that the final decree is affirmed but with directions to modify it by decreeing Mabry, Reaves and Carlton a first lien on the lands to secure their claim; to provide means for enforcing it along with and at the same time the claim of Knabb is being satisfied; that the cost of counting the faces should be assessed against Mabry, Reaves and Carlton; and that the $1,250 allowed the master should be reduced to $750., which we consider ample on this record.

Affirmed with directions.

BROWN, C. J., TERRELL, CHAPMAN and THOMAS, JJ., concur.

ON REHEARING GRANTED

BUFORD, J.:

On rehearing granted we have heard re-argument in this case and now reconsider same, pursuant to our opinion filed herein on June 5, 1942.

This is the second appearance of this case here. See Chicago Trust Co., et al., v. L. Knabb, 142 Fla. 767, 196 Sou. 200.

The history of the litigation may be gleaned from our original opinion on this appeal and our opinion filed as result of first appeal, supra.

On the former appeal we held that the decree of the lower court from which appeal was taken was erroneous and said:

"The plaintiff is estopped under his pleadings to deny that he was, at the time of the purchase of the tax certificates, the tenant of the party holding title as trustee. The fact that the personnel of the trustees was changed from time to time could have no effect on the rights of the parties. The successor trustee and Knabb. It, therefore, follows as an established

principle that Knabb could not acquire any more by purchasing tax certificates than he could have acquired by paying the taxes and the extent of that right would be a lien on the property for the amount paid for taxes. And this is true although Knabb may not have been in default in his payments, under the terms of the alleged lease at the time he paid the taxes. When, however, he continued to use the lands and remove timber and timber products therefrom under the terms of the lease and failed to pay therefor as was provided for in the lease, he became bound to credit his landlord the amounts thus accruing against the amount which he had paid for the benefit of the landlord for taxes. See Harbeson Lumber Co., v. Geneva Mill Co., 116 Fla. 342, 156 Sou. 710. Also see Williams v. Towl, et al., 65 Mich. 204, 31 N.W. 835; Morris v. Apperson, 11 Ky., 838, 13 S.W. 441, and Jackson v. King, 82 Ala. 432, 3 Sou. 232; Gorton, et ux., v. Paine, 18 Fla. 117; Brown, et al., v. A.N.B. and L.A., 46 Fla. 492, 35 Sou. 403.

"This case is not ruled by the opinion and judgment in the case of Armstrong, et al., v. Wilcox, 57 Fla. 30, 49 Sou. 41, because in that case it is shown that the tax certificates upon which a deed was issued were acquired by the grantee in the tax deed prior to the commencement of the tenancy and the lessor was put on notice that the lessee intended to exercise his rights under the prior acquired tax sale certificates.

"It is contended that in the instant case Knabb was under no obligation to pay the taxes or to redeem the certificates under the terms of the alleged lease. But the use of the premises for the purposes contemplated by the alleged lease was for the severing and removal of timber and timber products and the

lessee was upon notice of the statutory requirements that the payment of taxes was a prerequisite to the use of such lands for such purpose. See Sections 5278 and 5279 R.G.S., 7397 and 7398 C.G.L. He, therefore, took the alleged lease with the privilege of using the lands for such purpose *cum onore.*

"It is contended here, as it was contended in the court below, that counterclaim could not be maintained in this action because it did not arise out of the transaction which is the subject matter of the suit (See Sec. 35 of Fla. Chancery Practice Act), the contention being that the subject matter of this suit was the foreclosure of the tax certificates. However, the record shows that the subject matter of the suit is primarily the rights of the complainant which grew out of the alleged lease and right to use for the purpose designated the lands upon which the certificates were issued. The complainant alleged in effect that after becoming the lessee of the owner and while using the lands for the purposes contemplated by the lease, it became necessary for him to redeem the certificates and pay certain taxes, so that he might lawfully continue such use of the premises under the alleged lease and that he did redeem the certificates and pay the taxes for the purpose of protecting his rights under lease and he does not even allege that he paid the certificates and paid the taxes for the purpose of acquiring a title adverse to his landlord.

"It is too well settled to require citation of authorities in support of the enunciation that when equity has assumed jurisdiction it will settle all related matters in controversy between the parties. The complainant admits that he took the timber and timber products from the lands for many years without

paying therefor under the terms of the alleged lease or otherwise except by the payment of the taxes here involved. If he intended to set up an adverse claim because of these tax certificates it was his duty then to so advise the landlord and put the landlord on notice that such was his purpose. This he did not do. Certainly, under the facts disclosed by the record the complainant had the right to pay the taxes and to take credit for the amount thereof against whatever he might be obligated to pay to the landlord for the timber and timber products which he took from the land. This is in equity and good conscience what he should have done, unless he had chosen to surrender possession and stand upon the lien evidenced by his tax certificates.

"The equity rule, that he who comes into a court of equity must come with clean hands, applies in this case because it cannot be said that the complainant's hands are clean unless he is willing to do equity, and to do equity in this case he must account to the owner for that which he is due the owner under the terms of his contract and which amounts should have been credited as they accrued on the amount paid for taxes and tax certificates. Equity will require that to be done which in equity and good conscience should have been done.

"In arriving at the net amount due by one party to the other interest on balance found to be due at stated periods should be calculated at the rate of 8 per cent per annum.

"Whether or not complainant is entitled to a decree for attorneys fees depends on whether or not a balance is found to have been due the complainant at the date of the institution of the suit."

What transpired when our mandate went down is stated in our opinion of June 5, 1942, but to avoid confusion, we shall quote what was said therein in this regard:

"On the going down of the mandate a master was appointed and much testimony was taken. While the taking of testimony was in progress, Knabb moved to vacate the order of reference on the ground that since it was made, he had made a full and complete settlement with Duner individually and as trustee for all claims held by him. This motion was denied on the ground that Mabry, Reaves and Carlton were entitled to an accounting and to have any unpaid amount against Knabb's claim for taxes in favor of Duner paid them.

"On final hearing, the chancellor found (1) that Knabb was at all times during the life of the lease in arrears in payments thereon in excess of the amounts paid by him for taxes and that on July 5, 1939, when the title passed out of Duner into Mabry, Reaves and Carlton, Knabb owed Duner a balance of $29;073.67, (2) that after Reaves acquired title Knabb took products from the land for which he has not paid Reaves in the amount of $1,859.18, (3) that when Reaves took title there was a balance due on the two decrees of Mabry, Reaves and Carlton of $7,366.40, (4) that in October, 1940, while the suit was pending and after the trustee had been divested of title, Duner executed to Knabb a settlement paper relieving the latter of all claims and demands under his lease, (5) the effect of this release as betwen Knabb and Duner was to extinguish the trustee's claim for the rent asserted in his counter claim in its entirety and to leave Knabb's tax claim unimpaired and a first lien

against the property. The effect of the release as to Mabry, Reaves, and Carlton was precisely the same since the property was of sufficient value to pay them and Knabb, (6) that the attorneys for Duner are not entitled to a fee against Knabb. The chancellor then decreed Knabb a lien on the land for $19,304.06 including $948.97 attorneys fee for foreclosing the tax certificates, this being the sum the chancellor found to be due Knabb. From this decree, the present appeal was taken. Appellee filed cross assignments of error."

The document evidencing the settlement of claims between the parties reads as follows:

"State of Illinois
County of Cook

"Know All Men By These Presents that I, Joseph A. Duner, individually and as successor trustee under the Last Will and Testament of Walter E. Flanders, deceased, have made final and complete settlement with Lucius Knabb, who resides Moniac, Georgia, and I do hereby acknowledge payment and settlement in full of all claims of every kind and nature whatsoever which I, individually or as such trustee, have against the said Knabb and particularly I do hereby acknowledge satisfaction and payment of all claims of every kind and nature and of all rentals which have or may be found to be due and owing by the said Lucius Knabb arising from and growing out of the terms and conditions of a certain indenture of lease dated the 29th day of October, 1928, and a supplement thereto dated the 26th day of November, 1928, both of which said leases were executed by Chicago Trust Company to the said Lucius Knabb

covering the right of the said Knabb as tenant, to take oleo-resin and fell and remove timber from that certain tract of land situated in Baker County, Florida, known as the Baster Tract, or Chicago Trust Company Tract, and more particularly described in the first of the above described leases, which have been duly admitted to record in the office of the office of the Clerk of the Circuit Court in and for said Baker County, Florida, and I do hereby acquit and release the said Lucius Knabb of and from any claims of any kind or nature which I may have asserted or may hereafter assert against the said Lucius Knabb, for non-payment of rentals under the terms of said indenture of lease, and supplement thereto.

"Dated at Chicago, Illinois, the 30th day of October, 1940.

/s/ Joseph A. Duner

Individually and as successor Trustee under the Last Will. and Testament of Walter E. Flanders, deceased.

"Signed, sealed and delivered in the presence of us as witnesses:
/s/ R. S. Bullinger
/s/ Ralph S. Rangley"

On January 10, 1941 plaintiff moved to vacate the order theretofore made appointing a Special Master for the purpose of an accounting, and in such motion, averred:

"1. That insofar as the counting between the plaintiff and defendant Joseph A. Duner, as successor

trustee, is concerned, the said Knabb had, prior to the date of said order, fully accounted."

"That since the order or reference was made, plaintiff has made full settlement with Joseph A. Duner, individually and as successor trustee, for all rentals or any other claims asserted or to be asserted by the said Duner, individually and as successor trustee, against plaintiff."

We find in the record no room for doubt that the settlement between the Trustee Duner and the plaintiff Knabb of October 30, 1940 constituted a full and complete settlement of all accounts and claims each against the other to every extent to which they could make such settlement effective.

This is true because the record also shows that at the time this settlement was made a deed was given by Duner to Knabb reciting a consideration of $10.00 and other valuable considerations "to me in hand paid and hereby acknowledged," making an additional showing that the parties made a complete settlement. Knabb, by receiving the deed and Duner's release, is bound by the provisions of the documents equally with Duner who executed the documents. That such was the intent of the parties is shown by the testimony. Mr. Knabb was asked this question:

"I now ask you, if you did not owe anything, why you paid $2500.00 plus the settlement of these notes to get a release from Mr. Duner?" To which question he replied, "I wanted a full and complete settlement of the whole thing and a deed to the piece of land."

"A general settlement will be presumed to include all existing demands between the parties, imposing on the party claiming that certain items were not included, the burden of proving that fact." 15 C.G.S.

776; McDonald v. Piper, et al., 44 Atl. 455; Bailey v. Gordon, C.A. of D.C. 8 Fed. (2) 672; Marsh v. Pilcher Hardware Co., 190 Iowa 592, 180 N.W. 648; Young v. Paul, (App. Ct. of Ind. Div. 1, Nov. 1, 1921) 132 N.E. 602; Long v. Straus, et al., 124 Ind. 84, 24 N.E. 664.

Prior to the settlement above referred to, this Court in our opinion reported in 196 So. page 200, finally adjudicated that there was no obligation from Duner to Knabb on account of the tax payments unless those tax payments exceeded the rentals due by Knabb to Duner. This settlement necessarily conceded that the balance was in favor of Duner.

The settlement completely wiped out Knabb's claim for taxes paid because the record shows that his claim for taxes paid was $29,073.67 less than he owed for the use of the lands under the rental contract, and it also wiped out all of that $29,073.67 balance due from Knabb to Duner which it was legally competent for Duner to forgive or forego without the consent of Mabry, Reaves, Carlton & White, and William H. Frecker the attorneys who were employed to defend this suit instituted by Knabb, and to therein interpose and prosecute the trustees claim against Knabb for rentals due from Knabb to the trustee.

Under the showing of the record here and in accord with our opinion reported in 142 Fla., supra, Knabb never acquired any lien for taxes paid by him on the lands because his defaults in payment of rentals always exceeded the amount which he paid for taxes. The chancellor was in error in holding that the settlement of October 30, 1940 was not a settlement of Knabb's claim for taxes paid as well as for rentals due under the lease contract.

The only question left open for determination is as to what effect the settlement of October 30, 1940, between Knabb and Duner had on the right of Mabry, Reaves and Carlton, or of Mabry, Reaves, Carlton & White, and of William H. Frecker to continue the prosecution of the suit in the name of the trustee for the benefit of these lawyers to recover the amount alleged to be due them as attorneys fees from the trustee. As to the balance due Mabry, Reaves & Carlton for services in the original foreclosure suit, we do not think that Knabb is legally liable. That is an obligation due from the trustee with which Knabb was not concerned. In that case there was no judgment or decree against Knabb as to which a lien could attach in favor of the attorneys; nor do we find that the record establishes their right to a lien to be impressed upon the trustee's mere right of recovery in this suit to satisfy the balance then due Mabry, Reaves & Carlton.

The claim for fees in the instant case, however, presents an entirely different question. Here, Mabry, Reaves, Carlton & White and William H. Frecker undertook the enforcement of the settlement of a rental contract on which the record shows there was a balance due of $29,073.67 and while they were engaged in diligently performing that service the lessee and the lessor entered into a settlement of the claim leaving the attorneys out of consideration. This was in the face of the fact that the rental contract under which the claim was being prosecuted specifically provided:

"and further agrees that should it become necessary to collect by suit or otherwise any of the moneys

falling due hereunder, that he will pay a reasonable attorney's fee and all costs of such proceedings."

This lease agreement was made and entered into on the 29th day of October, 1928. If this suit had been instituted under the rules of Practice and Procedure as they existed at that time the relief sought by the defendant would have been asserted by way of cross-bill, the original defendant being cross-complainant and the original complainant being cross-defendant in such cross bill.

At the time pleadings were filed in this case cross-bills had been abolished and the original defendants filed answer claiming affirmative relief based on counter claim, which counter claim was for an accounting for money due by Knabb to the trustee under the terms of the lease.

When the settlement was made between Knabb and the trustee of the accounts and claims pending between them Mabry, Reaves, Carlton & White and William H. Frecker, were as attorneys at law, prosecuting the suit in behalf of the trustee on the issues presented by the amended bill of complaint, the answer and counter-claim and Knabb had full notice of the status of such attorneys. The settlement was made without knowledge, acquiescence or consent of the attorneys, was in derogation of their vested rights and, if binding as against them, deprived them of vested rights, which constituted a legal fraud against such attorneys. This is true because of the conditions above stated and because the trustee, as such, was insolvent; there was no property available out of which the attorneys could recover the amount due them for their services and the trustee was a non-resident.

The parties must be assumed to have had the intent to effectuate the result which all parties knew, or should have known, would flow from their conduct. Therefore, it must be assumed that both the trustee and Knabb when they made the settlement between themselves consummated the same pursuant to the intent of both parties to deprive the attorneys of their vested rights in the premises.

Insofar as the claim for rentals involved in this suit was concerned, the trustee was the plaintiff, Knabb was the defendant and bound by his contract, supra, to pay reasonable attorneys fees if, as a matter of fact, there was found to be due under the rental contract an amount in excess of what had been paid by Knabb for taxes or otherwise for the account of the trustee at the time of the institution of the suit.

It has been established that there was such balance due in the sum of $29,073.67. Therefore, it is established that Knabb was obligated to pay costs and attorneys fees.

In 5 Am. Juris. 372, Sec. 184, we find:

"According to the weight of authority, where the client makes a fraudulent or collusive settlement intended to deprive the attorney of his compensation or cost fees, the attorney will be permitted to proceed with the suit in the client's name for the purpose of protecting his interests."

See citation in note following text.

The Supreme Court of Oregon in the case of Jackson v. Searns, et al., 48 Ore. 25, 84 Pac. 798, text 800, said:

"Though a party may, without the consent of his attorney, make a bona fide adjustment with the adverse party and dismiss an action or a suit before a

judgment or a decree has been rendered therein, if it appears, however, that such settlement was collusive and consummated pursuant to the intent of both parties to defraud the attorney, the court in which the action or suit was pending may interfere to protect him, as one of its officers, by setting aside the order of dismissal and permitting him to proceed in the cause in the name of his client as plaintiff to final determination to ascertain what sum of money or interest in the subject matter, if any, is due him for his services when fully performed. Jones v. Morgan, 99 Am. Dec. 458; Randall v. VanWagenen (N.Y.) 22 N.E. 361, 12 Am. St. Rep. 828. See also the notes to Hanna v. Island Coal Co., 51 Am. St. Rep. 246, where it is said:

" 'Sometimes a collusive settlement is made between the parties for the purpose of defrauding the attorney of his fee before any judgment or decree has been obtained. When there is an evident intention thus to cheat the attorney, and to defraud him of his rights, the proper course for the attorney to pursue is to proceed with the suit in the name of his client, notwithstanding the collusive settlement for the purpose of collecting his costs.'

"See, also, on the same subject the notes to Camerson v. Boeger, 93 Am. St. Rep. 165. Mr. Justice EARL in Coughlin v. New York etc., Ry. Co., 27 Am. Rep. 75, illustrating this principle, says:

" 'It is certainly a general rule that parties to an action may settle the same without the intervention of the attorneys. Generally a plaintiff who has a cause of action against a defendant may release and discharge it upon such terms as are agreeable to him. This he may do while the action is pending and after

judgment he may cancel and discharge the judgment. In all this generally he infringes upon no privilege, and violates no right of his attorney. But since the time of Lord Mansfield, it has been the practice of courts to intervene to protect attorneys against settlements made to cheat them out of their costs. If an attorney has commenced an action, and his client settles it with the opposite party before judgment, collusively, to deprive him of his costs, the court will permit the attorney to go on with the suit for the purpose of collecting his costs.

"To the same effect is the case of Falconio v. Larsen, 31 Ore. 137, 48 Pac. 703, 37 L.R.A. 254, which was continued in the name of the original plaintiff, notwithstanding an alleged settlement between the parties."

See Glass v. Layton, et al., 140 Fla. 522, 192 So. 330; Harvey v. Rowe, 141 Fla. 287, 192 So. 878. In Harper v. Strong, 135 Fla. 10, 184 So. 848, while not directly in point here, we cited with approval Potter v. Ajax Mining Co., 72 Utah 273, 61 Pac. 999. A former appeal in that case is reflected in 57 Pac. 270 and in the opinion there reported the Court said:

"So also, at common law, without the intervention of the statute, it has long been the practice of courts to intervene to protect attorneys against settlements made by their clients to cheat them out of their costs. If an attorney has commenced an action and his client settles it with the opposite party before judgment, collusively, in fraud of his rights, and to deprive him of his costs, the court will permit the attorney to go on with the suit for the purpose of collecting his costs. Coughlin v. Railroad Co., 71 N.Y. 448; Randall v. Van Wagener, 115 N.Y. 531, 22

N.E. 361; Weeks v. Wayne Circuit Judges, 73 Mich. 256, 41 N. W. 269."

See also Miedreich v. Rank, et al., 40 Ind. App. 393, 82 N. E. 117 and 7 C.J.S. page 1179, Sec. 230 et seq.

Another contention is that the court below erred in not awarding Mabry, Reaves & Carlton decree for $1,411.85 to reimburse them for expenses incurred in a recount of box faces. We cannot say that it is made clearly to appear that the chancellor erred in this regard.

As stated in our opinion of June 5, supra, "We also think the allowance of $1,250 as master's fee was excessive. We see no basis in the record for allowing a special master a larger fee than the statute allows counsel to litigate the cause. In our view, this amount should be reduced by $500. In all other respects, the decree appealed from is affirmed."

Therefore, this allowance should be reduced to $750.00, which with other cost allowed shall be taxes against Knabb.

No lien exists as against the lands as to either party to this suit. Therefore, Knabb is not entitled to recover attorneys fees.

Mabry, Reaves, Carlton & White and Wm. H. Frecker are entitled to a decree under the accounting against L. Knabb in favor of Joseph A. Duner as successor trustee for the use and benefit of Mabry, Reaves, Carlton & White and William H. Frecker, as their respective interest may appear, for what may be found to be reasonable attorneys' fees earned in this suit on the basis of $29,073.67 recovery, to which the record shows the trustee was entitled when he made the settlement with Knabb, and also for costs.

Reaves is also entitled to a decree against Knabb for the use and benefit of Mabry, Reaves & Carlton in the sum of $1859.18 for products taken from the lands by Knabb after the title passed to Reaves.

When the court confirmed the sale to Reaves under the foreclosure decree and therein decreed the amount bid to be a fair value for the lands and that decree became absolute, the question of the value of the lands at the time of the sale became forever closed, in the absence of fraud, and no fraud is alleged in connection with that sale. Whether Reaves was afterwards able to sell the lands at a profit or loss is not material.

The decree is reversed and the cause remanded with directions that a decree be entered not inconsistent with the views herein expressed.

So ordered.

BROWN, C. J., WHITFIELD, CHAPMAN, THOMAS and ADAMS, JJ., concur.

TERRELL, J., dissents.