723 So.2d 263 (1998)
STATE of Florida, et al., Appellants,
v.
AMERICAN TOBACCO COMPANY, et al., Appellees.
State of Florida, et al., Petitioners,
v.
Kerrigan, Estess, Rankin & Mcleod, et al., Respondents.
Nos. 93148, 93195 and 93633.
Supreme Court of Florida.
November 13, 1998.
*264 Robert A. Butterworth, Attorney General, Myron H. Burnstein, Deputy Attorney General, Ft. Lauderdale, Louis F. Hubener, Assistant Attorney General, Jim Peters, Special Counsel and Kimberly Tucker, Deputy General Counsel, Tallahassee, and Parker D. Thomson and Carol A. Licko of Thomson, Muraro, Razook & Hart, Miami, for State of Florida, et al., Appellants/Petitioners.
Stephen J. Krigbaum, F. Townsend Hawkes, and Joseph Ianno, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, West Palm Beach, and Steven P. Lockman of Arnold & Porter, Washington, DC, for Settling Defendants.
James W. Beasley, Jr., David Leacock, and Robert J. Hauser of Beasley, Leacock & Hauser, West Palm Beach, and Bruce S. Rogow and Beverly A. Pohl, Ft. Lauderdale; and Gerald J. Houlihan of Houlihan & Partners, Miami, for Kerrigan, Estess, Rankin & McLeod; Montgomery & Larmoyeux; Sheldon J. Schlesinger, P.A.; Robert G. Kerrigan; Robert Montgomery, Jr., Sheldon J. Schlesinger; Howard & Associates, P.A.; and P. Tim Howard, Appellees/Respondents.
William C. Gentry of Gentry, Phillips & Hodak, Jacksonville; Wayne Hogan of Brown, Terrell, Hogan, Ellis, McClamma & Yegelwel, Jacksonville; and C. David Fonvielle III of Fonvielle, Hinkle & Lewis, Tallahassee, for The Peoples' Trial Advocates, Appellees.
Stuart C. Markman and Susan H. Freemon of Kynes, Markman & Felman, Tampa, for Yerrid, Knopik & Krieger, P.A., Appellee.
Thomas M. Ervin, Jr. of Ervin, Varn, Jacobs & Ervin, Tallahassee; Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach; and John F. Romano and Michael D. Eriksen of Romano, Eriksen & Cronin, West Palm Beach, for Joseph Rice; Ness, Motley, Loadholt, Richardson & Poole, P.A.; Scruggs, Millette, Bozeman & Dent, P.A.; and Maher, Gibson & Guiley, P.A., Appellees.
Arnold R. Ginsberg of Ginsberg & Schwartz, Miami, for Nance, Cacciatore, Sisserson, Duryea & Hamilton, Appellee.
Paul F. King, Assistant County Attorney, and Charles F. Schoech and Leonard G. Rubin of Caldwell & Pacetti, Palm Beach, for Dorothy H. Wilken, Clerk of Circuit Court, Fifteenth Judicial Circuit, Intervenor.
Cynthia M. Moore and Gary K. Harris of Boies & Schiller L.L.P., Orlando, for Richard A. Daynard, Intervenor.
PER CURIAM.
We have on consolidated review three trial court orders which the Fourth District Court of Appeal certified as being of great public importance and requiring immediate resolution by this Court. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const. As framed by the district court, the issue of great public importance raised in these orders which requires our immediate resolution is:
ARE THE FUNDS DERIVED FROM THE TOBACCO SETTLEMENT SUBJECT *265 TO DISBURSEMENT BY THE TRIAL COURT?
We find that this issue is better stated as:
ARE THE FUNDS DERIVED FROM THE TOBACCO SETTLEMENT WHICH ARE CURRENTLY IN THE REGISTRY OF THE COURT SUBJECT TO DISBURSEMENT BY THE TRIAL COURT OTHER THAN TO THE STATE?
For the reasons expressed in this opinion, we conclude that the trial court has no authority to disburse the funds currently in the registry of the court other than to the State of Florida. We have also consolidated in this review a petition for writ of prohibition filed in this Court by the State.
In February 1995, the State entered into a contract for legal services pursuant to section 409.910(15)(b), Florida Statutes (1995),[1] with several private law firms, collectively called the "Peoples' Trial Advocates" (PTA), to represent the State in litigation against the tobacco industry to recover Medicaid related expenses allegedly caused by the tobacco industry. The following provisions of this contract are pertinent in this review.
1. Section A of Attachment I, entitled "NATURE OF THIS CONTRACT" (as part of General Purpose Recitals) provides:
In light of the fact that the trial team is taking all the risks, and the fact that not a single case of this nature has ever been won, the State of Florida has determined that it is not appropriate to place taxpayer dollars at such risk. Section 409.910(15)(b), Florida Statutes, permits the trial team to receive up to 30% of the recovery. The State will ask the Court to require the tobacco companies to pay all the attorney fees and costs. The State and the [PTA] have agreed upon a fee of 25% of the recovery, plus out-of-pocket costs incurred by the [PTA] to the extent the recovery meets or exceeds the total costs, with a contribution being committed by the tobacco team lawyers toward health related charities and organizations.
2. Section B of Attachment I, entitled "SCOPE OF WORK," provides that in the event of a recovery, the PTA shall:
6. Hold any monies received as a result of any settlement, legal final judgment, or as a bond, in an interest bearing account... in a joint account bearing the names of both (a) [PTA representative] and the State of Florida as account holders. It is further understood and agreed that contingency fee payments and percentages shall be computed solely on the basis of the total amount of monies actually recovered and transmitted together with all accrued interest;
7. Within thirty (30) days of the earliest legally permissible date, release and transmit any and all monies recovered to the State in care of the Agency contact person designated pursuant to this contract, including interest accrued thereon, and this obligation is independent of the [PTA's] obligation to prepare and submit a contractor(s) Statement for Legal Services rendered and costs incurred;
8. Shall, as a condition and prerequisite to reimbursement for costs incurred and payment of contingency fees, prepare and *266 submit to the State an itemized statement of all legal costs incurred and the computing of the contingency fee, in a manner and form acceptable to the State auditors.
3. Section C of Attachment I, entitled "METHOD OF PAYMENT," provides:
1. Payment for the legal services covered by this contract shall be based on a contingency fee percentage of the total dollars recovered and reimbursed to the Department as provided for in Section 409.910(15), Florida Statutes. The total twenty five percent (25%) contingency fee sum is agreed to be shared and distributed among the providers.
2. It is understood and agreed that the provider(s) shall, as and for their legal fee(s) and subject to the charitable donations set forth below, be entitled to share a total contingency fee of twenty-five percent (25%) of the total sum of monies recovered and transmitted, plus out-ofpocket costs incurred by the providers to the extent that recovery meets or exceeds total costs, awarded in any Final Judgments, Court Orders, or negotiated settlement;
On August 25, 1997, the trial court approved and adopted as an enforceable order of the court a settlement agreement (Settlement Agreement) between the State and five of the tobacco companies (Settling Defendants). In this Settlement Agreement, the State and the Settling Defendants agreed that the circuit court retained jurisdiction "for the purposes of enabling any party to this Settlement Agreement to apply to the Court at any time for further orders and directions as may be necessary and appropriate to implement and enforce this Settlement Agreement." Settlement Agreement, ¶ I.A. Pursuant to this agreement, the trial court stated in its order adopting the settlement that it "expressly retains jurisdiction to enforce this Order and Settlement Agreement." State v. American Tobacco Co., No. 95-1466H (Fla.Cir.Ct. Aug. 25, 1997) (order approving and adopting the Settlement Agreement as an enforceable order of the court).
As part of the Settlement Agreement, the Settling Defendants agreed to deposit an initial general payment of $550 million into an escrow account (escrow account) on or before September 15, 1997, "for the benefit of the State ... pending Final Approval [of the settlement]." Settlement Agreement, ¶ II.B.1. The Settling Defendants were to deposit an additional $200 million to support a pilot program into a separate escrow account (pilot program account) under the same conditions. Id. ¶ II.B.2. Thereafter, the Settling Defendants were to make annual payments to the State based on a predetermined formula. Id. ¶ II.B.3. These future payments are to be paid into a special account for the benefit of the State of Florida. Id. If, however, any future payments became due prior to final approval of the Settlement Agreement, a term defined in the agreement, such payments were to be placed into the escrow account. On September 15, 1997, the Settling Defendants, the State of Florida, and Nations Bank, N.A., as escrow agent, executed an escrow agreement in accordance with the Settlement Agreement. This escrow agreement provides that upon order of the trial court, the escrow agent shall disburse the entire escrow amount. This provision expressly states that disbursement shall be "pursuant to authorization under Chapter 216, Florida Statutes, or shall be otherwise appropriated." Escrow Agreement, 8-15-97, § 4(a).
On the date that the court approved the Settlement Agreement, PTA lawyer Robert Kerrigan filed a charging lien against the settlement proceeds on "behalf of any attorney of record for the [State] that may wish to assert a lien for fees." Several of the PTA lawyers have since filed similar liens against the settlement proceeds. As a result of this action, a controversy arose concerning whether the PTA lawyers may use a common-law charging lien to attach the settlement proceeds in escrow, and any future payments made by the Settling Defendants. The trial court quashed the lawyers' charging liens, finding that the contract which formed the basis for the charging liens was unenforceable under the Rules Regulating the Florida Bar. In this order, the court directed the PTA lawyers to seek their fees under the Settlement Agreement. State v. American Tobacco Co., No. 95-1466AH (Fla. *267 Cir.Ct. Nov. 12, 1997) (order granting State's motion to quash charging liens).
Pursuant to its direction that the PTA lawyers were to seek their fees under the Settlement Agreement and in an effort to resolve this dispute, the circuit court invoked the Most Favored Nation (MFN) clause of the Settlement Agreement.[2] This MFN clause allows the State to take advantage of favorable terms in future preverdict settlement agreements between the Settling Defendants and other nonfederal governments by having those terms incorporated into the Florida settlement agreement. The State, the Settling Defendants, and PTA lawyers submitted proposals for incorporating into the Florida settlement agreement provisions relating to attorney fees contained in a settlement agreement between the Settling Defendants and the State of Texas. The settling parties objected to the court considering any proposal submitted by a PTA lawyer. On April 16, 1998, despite the objections raised by the settling parties, the court entered an order in accordance with a proposal submitted by a PTA lawyer. Pursuant to the provisions from the Texas settlement which were incorporated into the Florida settlement agreement, the court ordered the disbursement of $50 million of the funds in escrow to the PTA lawyers as an advance payment of fees. On April 24, 1998, the court denied a motion for a stay and again ordered the immediate disbursal of the $50 million.
The State and the Settling Defendants filed interlocutory appeals from both the April 16, 1998, and the April 24, 1998, orders. The district court by order dated May 26, 1998, passed both of these orders through to this Court certifying that they raised an issue of great public importance which requires immediate resolution by this Court. On April 18, 1998, the Florida legislature passed the Appropriations Act for FY 1998-99. Within this Act, the legislature appropriated all the monies that were being held in escrow under supervision of the court. This legislation, which was signed into law on May 15, 1998, took effect on July 1, 1998. On May 15, 1998, the trial court entered an order directing that the $187.5 million in escrow be transferred into the registry of the court. The court stated that "[t]his order is entered to comply with the stay order entered by the 4th DCA concerning these funds and to protect these funds from the application of recent legislation that may unconstitutionally vacate prior orders of this Court, deny parties due process of law and impair contract." State v. American Tobacco Co., No. 95-1466AH (Fla.Cir.Ct. May 15, 1998)(order granting motion to protect escrow funds). The State filed an interlocutory appeal from this order. The district court passed this order on to us, certifying that this order also raised an issue of great public importance which requires immediate resolution by this Court.
Three days after the circuit court transferred the monies being held in escrow into the court's registry, the district court on certiorari review reversed the trial court's November 12, 1997, order ruling the contract for legal fees to be unenforceable, concluding "the trial court denied [the private firms] due process when it sua sponte ruled unenforceable the contingent fee contract on which those liens were based, without notice and an opportunity for the parties and counsel to be heard." Kerrigan, Estess, Rankin & McLeod v. State, 711 So.2d 1246, 1249 (Fla. 4th DCA 1998). The district court remanded the case for further proceedings regarding the charging liens. On July 10, 1998, PTA lawyers filed a motion to enforce the charging liens. The trial court scheduled a hearing on this motion for August 14, 1998. The State then filed an emergency petition for a writ of prohibition in this Court seeking an order preventing the trial court from disbursing to the PTA lawyers any funds derived *268 from the tobacco settlement. We issued an order to show cause on August 10, 1998, thereby staying all litigation regarding the charging liens. See Fla. R.App. P. 9.100(h).
The crux of this review stems from the circuit court's order dated April 16, 1998. This order presents us with two separate issues. The first of these two issues is the one framed by the district court which we rephrased as: "Are the funds derived from the tobacco settlement which are currently in the registry of the court subject to disbursement by the trial court other than to the State?"
By its order dated April 16, 1998, the trial court directed that $50 million of the tobacco settlement proceeds in the court's registry be disbursed to the PTA lawyers as an advance payment of fees and that "future payments from Settling Defendants under the Florida Settlement Agreement shall be paid into the Escrow Account and will be disbursed pursuant to further order of the Court." State v. American Tobacco Co., No. 95-1466H ¶ 9 (Fla. Cir. Ct. April 16, 1998) (order implementing most favored nation provision of the Florida settlement agreement). The State contends that the circuit court exceeded its authority both in respect to the $50 million presently in the court's registry and in respect to the future payments by the Settling Defendants because any monies derived from the tobacco settlement are State funds. If the State is correct in asserting that all funds derived from the tobacco settlement are State funds, then those funds must be disbursed in accordance with legislative appropriation. See Art. VII, § 1(c), Fla. Const.
The PTA lawyers contend that the circuit court has the authority to order disbursement of the funds paid by the Settling Defendants to them on the basis of their charging liens. The lawyers argue that the funds when paid by the Settling Defendants are not State funds but that such funds are in custodia legis and the lawyers have vested rights in these funds as a result of their charging liens. See Mabry v. Knabb, 151 Fla. 432, 448-49, 10 So.2d 330, 336 (1942). The State responds that there is no authority for the circuit court to disburse these settlement funds on the basis of the charging liens. The State's response is founded upon the provisions of the Settlement Agreement between the State and the Settling Defendants, the contract between the State and the PTA lawyers, and the doctrine of sovereign immunity. We do not find it necessary to reach the question of sovereign immunity to resolve this issue because of the plain language of the settlement agreement and the contract for legal services read in conjunction with one another.
We hold that the circuit court has no authority to order disbursement of the funds currently in the registry of the court which were funds paid by the Settling Defendants pursuant to the Settlement Agreement other than to the State. We reach our conclusion from the plain language of the documents upon which the State relies. A lawyer's charging lien arises out of an express or implied contract for legal services. See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383 (Fla. 1983). The entitlement to such a lien, however, cannot be contrary to the provisions of that contract. We find that imposing a charging lien in this case would be contrary to the contract for legal services entered into between the State of Florida and the PTA lawyers.
The contract for legal services plainly states that upon the settlement becoming final all monies are to be transmitted to the State. The contract further provides that "[p]ayment for the legal services covered by this contract shall be based on a contingency fee percentage of the dollars recovered and reimbursed to the Department." Contract for Legal Services, Attachment I, ¶ C.1. Moreover, pursuant to the Settlement Agreement, all payments made by the Settling Defendants are made for the benefit of the State. The initial payments were paid into an escrow account in order to protect the Settling Defendants' interest in the funds until the Settlement Agreement became final. Thereafter, payments are to be made to the State.
By the express language of the contract for legal services, the PTA lawyers' entitlement to legal fees ripens upon the payments *269 being made pursuant to the Settlement Agreement and those payments being transmitted to the State. The contract language contradicts the assertion that a charging lien can be imposed on the settlement funds. Therefore, we reverse the orders of April 16 and April 24 which disburse funds to the PTA lawyers. We further reverse the April 16 order requiring future settlement payments to be paid into an escrow account. We remand with directions that the circuit court dismiss the charging liens with prejudice. Having directed the dismissal of the charging liens, we find the State's petition for writ of prohibition is moot. Moreover, in light of this decision, we find the issue argued in this review regarding the trial court's order dated May 15, 1998, also to be moot. All funds presently in the registry of the Circuit Court for the Fifteenth Judicial Circuit which were payments made pursuant to the Settlement Agreement shall be disbursed to the State of Florida within five days of the expiration of the time for rehearing or the disposition of any motion for rehearing.
Our decision on this issue is expressly limited to the charging liens. Our decision is without prejudice as to any other issue which may be raised by the PTA lawyers or the State concerning the contract for legal services. Claims for fees based upon that contract must be pursued in an action separate and distinct from the present case in which these orders were entered.
The second issue which we have considered in respect to the April 16 order is the circuit court's invocation of the MFN clause of the Settlement Agreement and incorporating a provision of a settlement agreement between the Settling Defendants and the State of Texas. The circuit court's order in this regard adopted a proposal submitted by one of the PTA lawyers. This proposal was adopted by the circuit court over the objection of all parties to the Settlement Agreement. We conclude that the circuit court erred in adopting this amendment to the Settlement Agreement under the circumstances in which this proposal was made and which was in fact objected to by all of the parties to the Settlement Agreement. We therefore reverse the April 16, 1998, order in its entirety.
While this case was before us on review, the State submitted a "Notice of Partial Settlement, Motion for Approval of Consent Decree, and Suggestion of Mootness." In this submission, the State notified us that the State, the Settling Defendants, and eight of the PTA lawyers reached an agreement on September 11, 1998, on several issues. The agreement requires approval and entry of a proposed consent decree by the court.[3] Once the consent decree is entered, and the thirty-day appeal period expires, the stipulation will become binding upon the Settling Defendants. This stipulation incorporates into the Florida agreement certain favorable terms of a preverdict settlement agreement between the Settling Defendants and the State of Minnesota. Because of the schedule for making payments under the stipulated revisions to the Settlement Agreement, the State has requested that this Court enter the consent decree. The State recognizes that its request is unique. The State, however, is concerned that because of challenges to specific judges assigned to this case in the circuit court, consideration of the consent decree by the circuit court will be unduly delayed, resulting in the possible disruption of a significant payment due early in 1999. Alternatively, the State has requested that this Court direct the Chief Judge of the Fifteenth Judicial Circuit to preside over the case for the purpose of consideration and ruling upon the consent decree. We have determined that we should remand this case for consideration and ruling upon the consent decree. At the time this decision is issued, the Chief Justice of this Court will appoint a presiding judge to hear further proceedings in this case including consideration of the consent decree.
*270 The case is hereby remanded to the circuit court for further proceedings in accordance with this opinion. All stays previously entered by this Court and by the district court are removed so that the case may so proceed. Any issues remaining in the case which are not within this Court's decision today are to proceed in the circuit court.
It is so ordered.
Any motion for rehearing shall be filed within seven days.
HARDING, C.J., and OVERTON, SHAW, KOGAN and WELLS, JJ., and BENTON, Associate Justice, concur.
PARIENTE, J., recused.
NOTES
[1] Section 409.910(15)(b), Florida Statutes (1995), provides:

(15) The department is authorized to enter into agreements to enforce or collect medical support and other third-party benefits.
....
(b) If an agreement to enforce or collect third-party benefits is entered into by the department with any person other than those described in paragraph (a), including any attorney retained by the department who is not an employee or agent of any person named in paragraph (a), then the department may pay such person a percentage of the amount actually collected and reimbursed to the department as a result of the efforts of the person, to the extent of medical assistance paid by Medicaid. In no case shall the percentage exceed a maximum established by the department, which shall not exceed the lesser of a percentage determined to be commercially reasonable or 30 percent of the amount actually collected and reimbursed to the department as a result of the efforts of the person under contract.
(Emphasis added.)
[2] The MFN clause states:

The Settling Defendants agree that if they enter into any future pre-verdict settlement agreement of other litigation brought by a nonfederal governmental plaintiff on terms more favorable to such governmental plaintiff than the terms of this Settlement Agreement (after due consideration of relevant differences in population or other appropriate factors), the terms of this Settlement Agreement will be revised so that the State of Florida will obtain treatment at least as relatively favorable as any such non-federal governmental entity.
[3] In its submission, the State attached a proposed consent decree which must be entered prior to the stipulation to amendment becoming binding upon the parties. We note that this consent decree is drafted in such a way that it should be entered by the Circuit Court of the Fifteenth Circuit.